UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILIPS NORTH AMERICA LLC,

        Plaintiff,

v.

FITBIT, INC.,

        Defendant.

Civil Action No. 1:19-cv-11586-IT

**DEFENDANT FITBIT INC.'S REPLY BRIEF IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS THE AMENDED COMPLAINT**

**LEAVE TO FILE GRANTED ON JANUARY 17, 2020**
**[Docket No. 38]**

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT .......................................................................................................................... 3

    A. Philips' opposition provides no legal basis for denying Fitbit's motion to dismiss ................................................................................................................. 3

        1. Philips' opposition ignores the claim language, the heart of the *Alice* inquiry ................................................................................................ 3

        2. Philips improperly equates novelty with patent-eligibility. ....................... 5

        3. No claim construction dispute prevents resolution of Fitbit's motion, as Philips does not argue any construction would affect the outcome ................................................................................................... 6

    B. Philips' conclusory lawyer-penned statements in the amended complaint, proffered for both step one and two of the *Alice* analysis, are inconsistent with the actual claim language and admissions in the specification ...................... 7

        1. The '233 patent claims recite only result-oriented use of known security mechanisms, not a technological improvement as alleged by Philips in the amended complaint. .......................................................... 7

        2. Philips' amended complaint allegations that the '377 patent claims are "an advanced network architecture" conflicts with the spec admissions that the claimed architecture was known, and the claims assign no "significant application functionality" to the server ........................................................................................................ 8

        3. Philips amended complaint does not show the '958 patent claims a "concrete technological advancement" "by changing how data is stored" because the claims are silent on a new way to store data .............. 9

        4. The '007 patent claims recite generic, unimproved components and technology, not an advancement in GPS or health monitoring technology ................................................................................................ 10

III. CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 ...................................................................................................1, 7

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838
    F.3d 1253 (Fed. Cir. 2016) ......................................................................................6

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    939 F.3d 1355 (Fed. Cir. 2019) ................................................................................9

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018) ................................................................................4

*Athena Diagnostics, Inc. v. Mayo Collab. Servs. LLC*,
    915 F.3d 743 (Fed. Cir. 2019) (*cert. denied*) ...........................................................2

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) (*cert. denied*) .........................................................1

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018) (Moore, Circuit Judge; *denial of reh'g en
    banc*) ....................................................................................................................1, 2

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ...........................................................................5

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ................................................................................8

*CardioNet, LLC. v. Infobionic, Inc.*,
    348 F. Supp. 3d 87 (D. Mass. 2018) .....................................................................3, 6

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ............................................................................1, 2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ...............................................................................2, 6

*Cleveland Clinic Found v. True Health Diagnostics LLC*,
    760 F. App'x 1013 (Fed. Cir. 2019) .........................................................................2

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ..............................................................................11

## TABLE OF AUTHORITIES
(*Continued*)

Page(s)

*Data Engine Techs. LLC v. Google LLC*,
 906 F.3d 999 (Fed. Cir. 2018)...........................................................................................5

*Elec. Power Group v. Alstom S.A.*,
 830 F.3d 1350(Fed. Cir. 2016)........................................................................................10

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
 879 F.3d 1299 (Fed. Cir. 2018) (Opp. )............................................................................4

*Genetic Techs. Ltd. v. Merial L.L.C.*,
 818 F.3d 1369 (Fed. Cir. 2016).........................................................................................6

*Intellectual Ventures I LLC v. Symantec Corp.*,
 838 F.3d 1307 (Fed. Cir. 2016).........................................................................................7

*Koninklijke KPN N.V. v. Gemalto MSM GmbH*,
 942 F.3d 1143 (Fed. Cir. 2019).........................................................................................4

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
 873 F.3d 905 (Fed. Cir. 2017)...........................................................................................2

*Synopsys, Inc. v. Mentor Graphics Corp.*,
 839 F.3d 1138 (Fed. Cir. 2016).................................................................................1, 3, 6

*In re TLI Commc'ns. LLC Patent Lit.*,
 823 F.3d 607 (Fed. Cir. 2016).........................................................................................11

*Trading Techs. Int'l, Inc. v. IBG LLC*,
 921 F.3d 1084 (Fed. Cir. 2019).......................................................................................11

*Trading Techs. Int'l, Inc. v. IBG LLC*,
 921 F.3d 1378 (Fed. Cir. 2019).......................................................................................11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
 874 F.3d 1329 (Fed. Cir. 2017).....................................................................................6, 7

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................................1

I.      **INTRODUCTION**

Philips' opposition clings to its amended complaint's conclusory allegations as the foundation for its defense of the Asserted Patents, ignoring the Federal Circuit's instruction that the ***claims***, not the complaint, control the Supreme Court's *Mayo/Alice* inquiry. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims"). Philips' near-silence on the claims and specification of the Asserted Patents evidences the weakness of its opposition and affirms the Asserted Patents cannot survive Fitbit's motion to dismiss under Supreme Court and Federal Circuit precedent. If the allegations of the amended complaint were supported by the claim language, Philips would have relied on the claims and not the amended complaint. Reliance on mere allegations, untethered to the claim language, is legally deficient.

Philips begins by mischaracterizing the scope and reach of *Berkheimer* and *Aatrix*. *Berkheimer* explicitly states patent eligibility "has in many cases been resolved on motions to dismiss," and "[n]othing in this decision should be viewed as casting doubt on the propriety of those cases." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), cert. denied. Ineligibility can be shown on a motion to dismiss by "[r]elying on the specification alone" "where, as in *Mayo*, the specification *admits*" claim elements were well-understood, routine, and conventional. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1371 (Fed. Cir. 2018) (Moore, Circuit Judge; *denial of reh'g en banc*) (emphasis original). Indeed, as in *Mayo*, the specifications of Philips' Asserted Patents admit the claims recite known and conventional technology and no particular solutions. Notably, Philips' opposition fails to address these admissions.

Instead, the opposition relies solely on amended complaint allegations "wholly divorced from the claims or the specification," which cannot defeat a motion to dismiss. *See Cellspin Soft,*

*Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).[1] The opposition ignores the Federal Circuit's instruction to tether *both steps* of the *Alice* analysis to the claim language. *See e.g. ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766, 775 (Fed. Cir. 2019). Even worse, Philips' allegations are often directly contradictory to the patent claims and specification. "**In ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict . . . the claims and the patent specification**." *Berkheimer*, 890 F.3d at 1372 (internal citation omitted) (emphasis added); *see also Athena Diagnostics, Inc. v. Mayo Collab. Servs. LLC,* 915 F.3d 743, 756 (Fed. Cir. 2019), cert. denied ("the district court was not obliged to accept [allegations inconsistent with the patent] as true"); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[C]ourt[s] need not accept as true allegations that contradict . . . the claims and the patent specification"). "There is no reason to task the district court with finding an inventive concept that the specification [] concede[s] does not exist." *Cleveland Clinic Found v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1019 (Fed. Cir. 2019).

Aside from the opposition's effort to transform the claimed abstract ideas through artful pleading, Philips appeals to the Court for charity and manufactures "disputes" in an effort to delay dismissal. Philips complains the abstract idea exception is difficult to address and thus should be construed narrowly, despite providing no legal support for this conclusion. D.I. 36 ("Opp.") at 8. Indeed the Supreme Court just denied cert in the *Berkheimer* and *Athena* cases,

---

[1] In *Cellspin* the Federal Circuit affirmed the step one finding that the claims were directed to an abstract idea, despite *Cellspin's* attorney argument (similar to Philips' allegations) that the claims recite a "technological improvement" of data capture devices. Addressing the step two analysis the Court stated: "[W]e do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or specification, defeats a motion to dismiss….As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional."

rejecting the same type of arguments Philips raises here regarding application of the patentability analysis. https://www.supremecourt.gov/orders/ordersofthecourt/19. The opposition also asks this Court to apply case law based solely on Philips' opinion regarding what the Federal Circuit "could have" held, despite its express holding to the contrary. *Id.* at 16. Philips complains that Fitbit overgeneralizes[2] (*id.* at 2, 9) and misinterprets (*id.* at 21, 13-14) the claims, yet never explains how these complaints are material to the patentability analysis.

## II.  ARGUMENT

### A.  Philips' opposition provides no legal basis for denying Fitbit's motion to dismiss

#### 1.  Philips' opposition ignores the claim language, the heart of the *Alice* inquiry

Philips' opposition ignores the Asserted Patents' claims and specifications, instead relying on amended complaint allegations and attorney argument divorced from the patent language. *See* section B. In fact, Philips makes no attempt to address the numerous specification admissions highlighted in Fitbit's motion (*see* D.I. 34 (Mot.) at 4-5, 10-14, 16-25), and there is only one instance in its 25-page brief where Philips relies on claim language to support its argument (*see* Opp. at 14). By focusing the other 24 pages on amended complaint allegations and attorney argument, Philips violates the Federal Circuit's clear instruction that "[t]he § 101 inquiry must focus on the language of the Asserted Claims." *Synopsys*, 839 F.3d at 1138.[3]

Indeed, many of the cases Philips relies on illustrate the importance of the claims in the

---

[2] Philips' allegation that Fitbit "asks this court to apply a level of generality that is divorced from the claim language" (D.I. 36 at 2) ignores the fact that Fitbit provided an appendix correlating every claim element combination to the abbreviated description used in the moving papers. Other than objecting, Philips fails to show how a narrower consideration of the claims, that includes details of every limitation, changes the abstract idea analysis.

[3] An instruction this Court followed when invalidating claims in *CardioNet, LLC. v. Infobionic, Inc.*, 348 F. Supp. 3d 87 (D. Mass. 2018). Plaintiffs attempted to limit the scope of the claimed "determination logic" through allegations and attorney argument (*id.* at 97), but this Court recognized: "The 'determination logic' [as described] by Plaintiffs is not a limitation set forth in the '207 patent. Instead, the [claimed] 'determination logic' is undefined and unspecified." *Id.*

§ 101 determination. Philips argues the '233 claims are analogous to those found eligible in *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) (Opp. at 19-20), yet the *Finjan* court relied on **claim language** reciting a particular malware identification solution to determine the claims recited an "improvement in computer functionality, rather than the abstract idea of computer security writ large." *Finjan*, 879 F.3d at 1304-05 (emphasis added). The *Finjan* claims recited more than a "mere result," because the **claims** included "specific steps" to implement the malware identification solution. *Id.* at 1306. In direct contrast, the '233 **claims** do not recite a particular "security mechanism," nor does Philips allege they do. *See* Opp. at 20.

Philips argues the '958 claims are similar to those in *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), which were found eligible due to the **claims'** recitation of a "specific technique" that "specifically identi[ed] how that functionality improvement [was] effectuated in an assertedly unexpected way." *Id.* at 1348. This specificity "transform[ed the] claim from [] claiming only a result to one claiming a way of achieving it." *Id.* at 1349. Philips argues the '958 claims "pass muster at step one for the same reasons" "**by changing how data is stored**," Opp. at 12 (emphasis original), yet the '958 claims are silent on *how* data is stored.

Philips' reliance on *Koninklijke KPN N.V. v. Gemalto MSM GmbH*, 942 F.3d 1143 (Fed. Cir. 2019) similarly ignores the significance of the claim language to that holding. In *KPN*, appellants did not appeal invalidation of the independent claim, because the inventive concept, although discussed in the specification, was captured only in the dependent **claims**. *Id.* at 1150-51. Moreover, appellees did not dispute the concept was inventive; rather, their defense was based on the argument the concept was "not adequately captured *in the claims*[.]" *Id.* at 1151 (emphasis original). As discussed in section B, Philips' amended complaint allegations relate to concepts not captured in the patent **claims**.

The importance of the claims to the § 101 analysis in comparison to mere allegations in

the complaint is further illustrated in *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018), a post-*Aatrix* decision. With its complaint, the *Data Engine* patentee submitted articles that "show[ed] the state of the art at the time of the invention and evidenc[ed] the significance of the claimed methods to spreadsheet technology" to "tout[] the advantages of its use of notebook tabs to improve navigation through three-dimensional spreadsheets." *Id.* at 1004. Yet, the court emphasized it was the **claims**, not the complaint, which governed the § 101 analysis. *See id.* at 1001. Even though the asserted patents had "substantially identical" specifications (*id.* 1001 n.1), one patent was eligible because the **claims** recited a "specific implementation of a notebook tab interface," and the other was ineligible because the **claims** were "not limited to th[at] specific technical solution" and recited only a "generic[]" implementation. *Id.* at 1012.

### 2. Philips improperly equates novelty with patent-eligibility.

Philips' opposition leans heavily on the amended complaint's repeated allegations that the claims present technological advancements. Opp. at 10-11 ('958 claims "technological advancements"), 17 (prior art did not include the '377 invention), 18-19 ('233 claims "improvements over the prior art"), 22 ('007 patents claimed "technological advancement").[4] As a preliminary matter, this Court is "not required to accept [the patentee's] legal conclusions as true, even if couched as factual allegations," including "repeated characterization of its inventions as 'technical innovations.'" *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019).

But, even assuming these allegations are true, they are not enough to confer patent eligibility to Philips' claims. "[P]urported technological innovations" are "relevant to a novelty

---

[4] *See also* Opp. at 12-13 ('958 claims a "technical improvement"), 16 ('377 claims a "technological improvement"), 24 ('007 claims "improvements over the prior art").

and obviousness analysis, and not whether the claims [are] directed to eligible subject matter," because " [e]ligibility and novelty are separate inquiries." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339-40 (Fed. Cir. 2017) (affirming district court's rejection of evidence attached to its complaint because such evidence "was relevant to a novelty and obviousness analysis, and not whether the claims were directed to eligible subject matter").[5] This is because "a claim for a *new* abstract idea is still an abstract idea" (*Synopsys, Inc.*, 839 F.3d at 1151) and adding "novel or non-routine components is not necessarily enough [for claims to] survive a § 101 challenge." *ChargePoint*, 920 F.3d at 773. As such, mere allegations of novelty alone do not provide a basis to deny Fitbit's motion.

### 3. No claim construction dispute prevents resolution of Fitbit's motion, as Philips does not argue any construction would affect the outcome

Philips tries to manufacture claim construction disputes by arguing Fitbit misinterpreted the '377 patent's claimed "response" (Opp. at 13-14) and the '233 patent's claimed "security mechanism" (*id.* at 21). While Fitbit maintains its previous interpretation of the claim language,[6] the exact claim scope in these instances will not affect this Court's § 101 analysis. Philips does not disagree: it offers no alternative scope for these terms, nor does it explain how a different scope for these terms would affect the claims' eligibility.

Undefined and irrelevant claim construction "disputes" do not mandate denial of a motion to dismiss.[7] *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016)

---

[5] *See also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) (finding no error in the district court refusing to rely on allegations that using a "user-downloadable application" was novel, because "the eligibility finding does not turn on novelty." *Id.* at 1263, n.3.

[6] Philips contests including "encryption" in the scope of the claimed "security mechanism" (Opp. at 21), yet the '233 claims state encryption is a "security mechanism." '233 patent, claim 2.

[7] Even if the Court disagrees with Fitbit and finds a relevant claim construction dispute, § 101 still may be resolved at this stage. *CardioNet*, 348 F. Supp. 3d at 90 ("'[i]f there are claim

(allowing § 101 analysis when "there is no claim construction dispute relevant to the eligibility issue"). And even if Philips had proposed constructions, such constructions cannot infuse technological improvements or inventive concepts into the actual functional and generic claim language. *See Two-Way Media*, 874 F.3d at 1336, 1338 (affirming district court's determination that "claims cannot fairly be read to recite [purportedly inventive] computer architecture even in light of [Two-Way Media's] proposed claim constructions" as patentee's proposed constructions did not "sufficiently tie the claims to particular scalable network architecture").

> B. **Philips' conclusory lawyer-penned statements in the amended complaint, proffered for both step one and two of the *Alice* analysis, are inconsistent with the actual claim language and admissions in the specification**
>
> 1. **The '233 patent <u>claims</u> recite only result-oriented use of known security mechanisms, not a technological improvement as alleged by Philips in the amended complaint.**

Fitbit and Philips agree that the '233 claims are directed to secure data transfer between devices.[8] Mot. at 4; Opp. heading at 18. Despite this, and relying solely on allegations from the amended complaint, Philips argues the '233 claims are non-abstract and pass *Alice* step one and two analysis because they "improved" existing security mechanisms and provided a functionality "not present in the prior art." Opp. at 18-20.

Philips' arguments on both the steps one and two *Alice* analysis, based solely on allegations in the amended complaint, are inconsistent with the '233 patent. For example, Philips' allegations that the prior art lacked sufficient protection for personal information transmitted between known devices (Opp. at 6) and "the '233 patent . . . provided a type of security mechanism that was not present in the prior art" (*id.* at 19) are contradicted by the '233

---

construction disputes, . . . the court [may] proceed by adopting the non-moving party's construction,' (citing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125).
[8] A concept which the Federal Circuit has deemed an abstract idea. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016)

specification's admission that the claims encompass *known security mechanisms* ('233 patent, 13:41-44, 14:7-8), governing *known communications protocol* (*id.* at 4:47-56, 4:60-63, 6:14-16, 6:23-28, 6:49-51), between *known devices* (*id.* at 1:63, 11:50-53). The opposition simply argues that the known security mechanism used in the claimed system is different because the type of data that is being transmitted and secured by the generic security mechanism was personal medical data (Opp. at 7). An abstract idea is not transformed merely because it "applies an abstract idea in a narrow way." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). Philips alleges that the '233 patent also improved technology and thus passed *Alice* step two analysis because "it was nearly impossible to obtain real-time health information…" (Opp. at 20 (citing Compl. ¶¶ 80-81)), yet the '233 claims do not require providing real-time information.

      **2.**      **Philips' amended complaint allegations that the '377 patent claims are "an advanced network architecture" conflicts with the <u>spec</u> admissions that the claimed architecture was known, and the <u>claims</u> assign no "significant application functionality" to the server**

The '377 patent claim language and specification demonstrates the claims' direction to collecting, analyzing, and presenting data (*see* Mot. at 10-14) using "off-the shelf" wireless devices, yet Philips argues without citation to claim or specification that the subject matter claimed reflects "advancements in the arrangement of computer components[.]" Opp. at 13-14. The supposed "advancements" that Philips relies on for the *Alice* step one analysis are not captured in the claims. For instance, the '377 claims do not recite processing data "in real time," nor do they require all "data analysis [] offloaded to a server" (Compl. at ¶ 112) or "significant application functionality on the server" (*id.* at ¶ 111). Rather, the claims recite multiple devices processing data, and require only one, generic, server action (calculating a "response"). *See* '377 patent, 13:23-43. Thus, despite Philips' allegations in the amended complaint, the claim language

imparts on the server no particular type or volume of "data analysis," and certainly does not require the server to perform "significant application functionality." *Compare id. with* Compl. at ¶ 111. In the step two analysis Philips ignores the admissions in the specification that the same distributed architecture claimed in the patent was used in the prior art, albeit with a modified cellular or wired telephone instead of an "off-the-shelf" wireless device. '377 patent, 2:22-51. Substituting an "off-the shelf" wireless device for a modified cellular or wired telephone does not transform an abstract idea into patentable subject matter, nor reflect an improvement in wireless technology—it is after all "off the shelf" technology used "in a known fashion." *Id.* at 3:36-57; 7:46-60.

> 3. **Philips amended complaint does not show the '958 patent claims a "concrete technological advancement" "by changing how data is stored" because the <u>claims</u> are silent on a new way to store data**

The '958 patent claim language and specification indicate the claims are directed to collecting and storing health data if there is a connection interruption. Mot. at 16-19. Philips argues the claims are non-abstract under *Alice* step one because they offer a "concrete technological advancement" "***by changing how data is stored***." Opp. at 11-12 (emphasis in original). Despite this assertion's emphasis and foundational role in the opposition, it lacks support in the '958 patent and isn't even alleged in Philips' amended complaint. The '958 claims are silent as to "*how* data is stored"; they only recite *when* data is stored. The '958 specification describes storing data in any media on a device, and identifies no specific method for storing data on the device after an interruption. Mot. at 18-19. Rather than providing mechanisms regarding "how data is stored," the '958 patent claims simply recite the *result* of storing data upon connection interruption. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1363 (Fed. Cir. 2019) (claims must recite "mechanisms for achieving [a] desired result").

Philips arguments that the '958 patent claims pass Alice step two because the amended

- 9 -

complaint contends the claims are not directed to components used in a conventional way is in conflict with the claim language and specification. The opposition itself never even describes *how* the '958 claims allegedly "chang[e] how data is stored." In fact, Philips admits at the time of the invention, it was "the convention" to "store data locally" or to transfer data wirelessly to a remote server for storage (Compl. at ¶¶ 132-34), yet the '958 claims also recite storing data locally. Nothing in the claims or the specification indicates an unconventional use of the generic components.

> 4. **The '007 patent <u>claims</u> recite generic, unimproved components and technology, not an advancement in GPS or health monitoring technology**

The '007 claims recite the well-recognized abstract idea of collecting, analyzing, and presenting data (*see Elec. Power Group v. Alstom S.A.*, 830 F.3d 1350, 1353(Fed. Cir. 2016)) using known methods and generic components. *See* Mot. at 21-23. Once again relying only on the amended complaint and devoid of '007 patent support, the opposition pursues *Alice* step one and two eligibility by arguing the claims present novel advancements in GPS technology and athletic monitors. Opp. at 21-22.

Philips arguments are contradicted by the '007 patent. The claims recite a known GPS module performing its standard function: determining latitude and longitude. '007 patent, 4:54-59, 5:41-44, 7:29-39.[9] Philips' alleges in the amended complaint the '007 patent improved athletic monitors "with a device that could 'continuously and consistently provide[] accurate, athletic performance data to an athlete'" (Opp. at 25 (citing Compl. at ¶ 65)), yet the '007 specification admits this function was already performed by treadmills ('007 patent, 1:16-24) and the claims do not require "continuously" providing data to the athlete. Philips argues allowing

---

[9] Philips even admits the '007 patent claims do not recite an advance in GPS technology. Compl. at 22.

the claimed device's audio functionality was an improvement (Opp. at 23-24), yet the '007 patent admits the claims encompass generic devices providing audio through generic headphones used in a conventional manner (i.e. worn "as usual") '007 patent, 5:5, 4:36–39. The claims merely connect known components, used in a conventional manner, to perform the abstract idea of providing performance feedback (*see* Mot. at 23).

Next, Philips claims it is irrelevant whether any particular *component* was improved, because the '007 patent improves a *system* for exercise monitoring. Opp. at 23. Yet the '007 claims simply recite using known components and performing conventional functions "in a nascent but well-known environment," which does not confer patent eligibility. *In re TLI Commc'ns. LLC Patent Lit.*, 823 F.3d 607, 612 (Fed. Cir. 2016). The opposition's reliance on *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) only emphasizes the weakness of Philips' argument, because the court in *Core Wireless* found claims non-abstract *expressly because they were directed to an improved component*. *Core Wireless*, 880 F.3d at 1362 (finding claims "directed to an improved user interface"). In stark contrast, the '007 patent claims known components used in a conventional way, with no recited improvement to any of them. *See* Mot. at 22-24. Philips' claims are more similar to those in the recent *Trading Techs.* cases distinguishing *Core Wireless*.[10] Here, the Federal Circuit found claims ineligible and no technological solution despite the claimed interface's ability to allow humans to "process information more quickly." *Trading Techs. I*, 921 F.3d at 1089. Similarly, even if the '007 claims render athletic monitoring more convenient for users, they do not recite a technological improvement because they do not recite improvements to any monitoring technology itself.

---

[10] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ("*Trading Techs. I*");
*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378 (Fed. Cir. 2019) ("*Trading Techs. II*").

### III.     CONCLUSION

Fitbit requests the Court to dismiss Philips' First Amended Complaint with prejudice.

| | |
|---|---|
| Dated: January 17, 2020 | FITBIT, INC. |
| | By Its Attorneys, |
| | |
| | /s/ *Yar R. Chaikovsky* |
| | Yar R. Chaikovsky (*Pro Hac Vice*) |
| | yarchaikovsky@paulhastings.com |
| | David Beckwith |
| | davidbeckwith@paulhastings.com |
| | David Okano |
| | davidokano@paulhastings.com |
| | Radhesh Devendran |
| | radheshdevendran@paulhastings.com |
| | Berkeley Fife |
| | berkeleyfife@paulhastings.com |
| | |
| | PAUL HASTINGS LLP |
| | 1117 S. California Avenue |
| | Palo Alto, California  94304-1106 |
| | Telephone:   (650) 320-1800 |
| | Facsimile:    (650) 320-1900 |
| | |
| | Chad J. Peterman (*Pro Hac Vice*) |
| | PAUL HASTINGS, LLP |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | Telephone:   (212) 318-6797 |
| | Facsimile:    (212) 230-7797 |
| | E-mail: chadpeterman@paulhastings.com |

**CERTIFICATE OF SERVICE**

     I certify that a true copy of the above document was served on the attorney of record for each party via the Court's CM/ECF system.

| | |
|---|---|
| Dated: January 17, 2020 | By:  */s/ Yar R. Chaikovsky*<br>Yar R. Chaikovsky (*Pro Hac Vice*) |