UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC )<br>)<br>      Plaintiff,             )<br>)<br>v.                           )<br>)<br>FITBIT, INC.,              )<br>)<br>      Defendant.          )<br>)<br>)<br>) | C.A. No. 1:19-cv-11586-IT<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S SUR-REPLY MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Fitbit argues in its Reply that the Court should substitute Fitbit's legal arguments relating to subject matter eligibility for the substantial facts pled in the First Amended Complaint. Of course, the eligibility analysis under Section 101 involves much more than high-level characterizations of the claims, or even claim construction. Indeed, given the level of detail in Philips' pleadings, it's hard to see any pleading regarding subject matter eligibility passing legal muster under Fitbit's view.

Philips' First Amended Complaint addresses at length the claimed inventions and how they would be understood by a person of ordinary skill. *See* D.I. 25 at ¶¶ 59, 62-64 (as to the '007 patent); ¶¶ 83, 86-88 (as to the '233 patent); ¶¶ 107, 110-113 (as to the '377 patent); ¶¶ 130, 132-134 (as to the '958 patent). It also explains how the different claims across four patents pertain to advancements in electronics systems. (*See, e.g.,* D.I. 25 at ¶¶ 66, 77, 90, 115, 135); *c.f. Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ("the [patent's] specification need not expressly list all the reasons why" a claim is patent eligible). It further explains that

many of the claims are directed to physical devices and systems, or operation of such devices (*see, e.g.,* D.I. 25 at ¶¶ 53, 68, 77, 92, 101, 114, 125, 137), that the inventions are not the application of previously executed methods on general purpose computers or pre-existing electronic systems, (¶¶ 64, 88, 113, 134), and that the inventions are novel as to the physical devices and the methods performed using them (¶¶ 56, 63-69 (as to the '007 patent), ¶¶ 80, 87-93 (as to the '233 patent), ¶¶ 104, 112-118 (as to the '377 patent), ¶¶ 129, 134-138 (as to the '958 patent)).

These pleadings raise factual questions, as repeatedly recognized by the Federal Circuit (*e.g.*, *Berkheimer*, *Cellspin*, *Gemalto*, *Aatrix*) and recently affirmed as the law of the land by the Supreme Court in denying *certiorari* in *Berkheimer* and *Cellspin*, which emphasized that:

> [W]e expressly stated that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)."

*Cellspin,* 927 F.3d at 1318 (quoting *Aatrix*).  Fitbit's attorney argument is not evidence and cannot negate the pleadings, which are to be taken as true. *See, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence.").

I. **ARGUMENT**

   a. **Philips' Allegations Should Be Taken As True At The Pleading Stage, Not Disregarded In Favor Of Fitbit's Characterizations Of The Patented Technology**

In its opening brief, Fitbit largely ignores Philips' detailed pleadings in favor of its own broad characterizations of the claimed innovations as directed to "secure data transfer between devices" (D.I. 34 at 4 (relative to '233 patent)), "collecting and analyzing exercise data, and presenting that data to a user" (*id.* at 11 (relative to the '377 patent)), "collecting and storing health data so it is not lost during a wireless connection interruption" (*id.* at 17 (relative to the '958 paten)), and "collecting and analyzing exercise data to track an athlete's performance" (*id.*

2

at 21 (relative to the '007 patent)).  The claims do not include Fitbit's language, and Fitbit's characterizations are no substitute for the claimed inventions. The language of the separate claims captures the advancements over the prior art as recognized by the USPTO.  (*See, e.g.*, D.I. 25 ¶¶ 83-91 (relative to the '233 patent); ¶¶ 107-116 (relative to the '377 patent); ¶¶ 130-136 (relative to the '958 patent); ¶¶ 59-67 (relative to the '007 patent).)[1]

In its Reply, Fitbit asserts that the Court should simply ignore Philips' pleadings because they are "wholly divorced from" and "contradict" the patents' claims and specifications.  This is incorrect.  Philips' First Amended Complaint extensively cites and quotes the claims, the specifications and the prosecution histories of the patents-in-suit.  (*See* D.I. 25 ¶¶ 53, 56-69 (as to the '007 patent); ¶¶ 77, 80-93 (as to the '233 patent); ¶¶ 101, 104-118 (as to the '377 patent); ¶¶ 125, 128-138 (as to the '958 patent).)  Philips' First Amended Complaint also includes numerous pleadings explaining how the claimed inventions would be understood to a person of ordinary skill. (*See* D.I. 25 at ¶¶ 59, 62-64 (as to the '007 patent); ¶¶ 83, 86-88 (as to the '233 patent); ¶¶ 107, 110-113 (as to the '377 patent); ¶¶ 130, 132-134 (as to the '958 patent).)  Taken together, Philips pleadings go far beyond what is required.

---

[1] As an example, claim 9 of the '233 patent provides a novel "bi-directional wireless system" (a physical thing) with a security mechanism "governing information transmitted between the first personal device and the second personal device," and the specification explains that the invention enables "various entities spread around a network to receive and/or transmit to and control the personal device 100" where "[o]nly authorized agents should be allowed access to the device 100." (*See* claim 9 and col. 13, ll. 24-40.)  The patent also provides an example application of the claimed invention wherein "only responding personal RP (such as trained paramedics) who are on the scene of the event may be allowed to send a command to the personal device 100 causing the personal device 100 to dispense medication to the victim." *Id.*  This system is different from and patentable over Bluetooth as found by the USPTO.  (*See* D.I. 25 ¶ 84.) Concerning this patent, Fitbit attempts to distinguish *Finjan*, but *Finjan* upheld claim language to a "downloadable security profile that identifies suspicious code."  *Finjan*, 879 F.3d at 1303-1306.  The *Ancora* court similarly upheld a method claim on the basis of "verifying the program using at least the verification structure." *Ancora,* 908 F.3d at 1346, 1349.

These pleadings are highly relevant to the Section 101 inquiry; far from ignoring them (as Fitbit urges), the Court must take them as true at this stage. *Cellspin Soft, Inc. v. Fitbit, Inc. et al.*, 927 F.3d 1306, 1314 and 1318 (Fed. Cir. 2019) ("we determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy") (quotations omitted).

Moreover, Fitbit's support for its argument is unhelpful.  For the proposition that Philips' pleadings should be ignored, Fitbit cites *Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).[2]  In that case, the complaint did not include any pleadings supporting eligibility and no amended complaint was filed; the court was left with attorney argument on both sides.  (*See* Complaint from underlying case; Ex. A.)  Furthermore, the decision pre-dates *Aatrix, Berkheimer* and subsequent cases in which the Federal Circuit recognized that the 101 analysis is based on underlying facts. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018) ("allegations at a minimum raise factual disputes underlying the §101 analysis");

Unable to confront Philips' well-plead allegations, Fitbit resorts to pulling soundbites from Federal Circuit cases that bear little resemblance to the issues here.  Philips' allegations do not "contradict" the claims or specifications; they are consistent with the findings of the PTO and

---

[2] Fitbit also cites *Berkheimer* for the proposition that the court need not accept certain allegations as true. (D.I. 39 at 2.)  But, Fitbit ignores that the Federal Circuit overturned the trial court for failing to credit allegations such as that the patents "improve the functioning of the data processing systems, computers and other hardware" because the "allegations suggest[ed] that the claimed invention is directed to an improvement in the computer technology and not directed to generic components performing conventional activities." *Id.* at 1372.  The court went on to note that "[w]e cannot adopt a result-oriented approach … that would fail to accept as true the complaint's factual allegations." *Id.* at 1373. Read in context, the discussion of how motions to dismiss should be resolved actually supports **denying** Fitbit's motion.  Fitbit's additional citation of *Athena* is inapposite as the court was only deciding whether to consider a declaration on a Rule 12(b)(6) motion; it was not a situation where a defendant bearing the burden of proof argues that pleadings should be ignored. *Athena Diagnostics v. Mayo Collaborative*, 915 F.3d 743, 755 (Fed. Cir. 2019) ("the district court did not consider the declaration").

4

what will be established through fact and expert discovery per the pleadings.  These allegations must be taken as true at the pleading stage, and when they are, Fitbit's motion must be DENIED.

### b. The Supreme Court's Recent Denials Of *Certiorari* In *Berkheimer* And *Cellspin* Support Denying Fitbit's Motion To Dismiss.

The other argument that Philips wishes to address relates to the application of the Supreme Court's recent decision to deny *certiorari* in several Section 101 cases.  Fitbit asserts that the Supreme Court "reject[ed] the same types of arguments Philips raises" in this case by denying review in *Berkheimer* and *Athena*.  (D.I. 39 at 3.)  Fitbit wills this interpretation into existence but can offer no support, other than a link to a list of orders on the Supreme Court's website.  (*See id.* (citing www.supremecourt.gov/orders/ordersofthecourt/19).)

In reality, the Supreme Court's recent decision to deny review in these cases (including a petition filed by Fitbit) was a direct blow to Fitbit's arguments here.  Fitbit's statement is factually incorrect and its cited "support" is nonexistent.

In *Berkheimer*, the petitioner argued that "the Federal Circuit has replaced this Court's test for patent eligibility – in which a court must determine as a matter of law whether a patent covers eligible subject matter by examining the elements of the claim – with a fact-intensive test based on the state of the prior art at the time of the patent."[3]  In other words, the petitioner made the exact same argument that Fitbit is making here – that the patent should control the Section 101 inquiry and factual pleadings should be ignored.  The Federal Circuit rejected it.  By denying review, the Supreme Court saw fit to leave what the petitioner characterized as the Federal Circuit's "fact intensive test" for patent eligibility undisturbed.

---

[3] *See* https://www.supremecourt.gov/DocketPDF/18/18-415/65216/20180928162630738_36823%20pdf%20Hong%20I%20br.pdf at Introduction.

Fitbit also argues that the Supreme Court's decision denying *certiorari* in *Athena Diagnostics* rejected the same types of arguments Philips makes in opposing Fitbit's motion. (D.I. 39 at 3.)  Not so.  *Athena* involved claims to methods for diagnosing a medical condition, and accordingly the case concerned the exception to patent eligibility for laws of nature, not abstract ideas.

In the *Cellspin* petition for *certiorari*, Fitbit complained that the Federal Circuit had held that "allegations in a complaint that aspects of the claim are inventive are sufficient to defeat a motion to dismiss."[4]  That is still the law because the Supreme Court denied *cert* and left the Federal Circuit's decision undisturbed.  It is certainly not, as Fitbit argues, a "reject[ion] of the same types of arguments that Philips raises" in this case, and Fitbit makes no effort to explain how it was.

These decisions confirm that allegations like those in Philips' First Amended Complaint are sufficient at the pleading stage.  Fitbit does not, and cannot, cite a single Federal Circuit case affirming dismissal in the face of well-pled allegations similar to Philips' First Amended Complaint.  The Court should decline Fitbit's invitation to ignore Philips' pleadings, and the Court should reject Fitbit's characterization of the Supreme Court's recent decision denying *certiorari* in these Section 101 cases.

## II. CONCLUSION

The Court should not declare any claim invalid in the face of Philips' well plead and highly detailed allegations.  Fitbit's Motion to Dismiss should be DENIED.

---

[4] *See* https://www.supremecourt.gov/DocketPDF/19/19-400/116708/20190923153010855_Garmin%20Cert%20Petition%209.23%20Final.pdf at 4.

Dated: March 23, 2020								Respectfully Submitted,


 /s/ Lucas I. Silva
Lucas I. Silva (BBO 673,935)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Phone: (617) 342-4000
Fax: (617) 342-4001
lsilva@foley.com

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 N. Clark Street
Suite 2800
Chicago, IL 60654-5313
Phone: (312) 832-4359
Fax: (312) 832-4700
ethompson@foley.com


*Counsel for Philips North America LLC*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that, on March 23, 2020, a copy of the foregoing document was filed with the Court through the ECF system and that a copy will be electronically served on registered participants as identified on the Notice of Electronic Filing.

                                        By:    /s/ Ruben J. Rodrigues