# Exhibit A

William J. O'Brien (Bar No. 99526)
wobrien@onellp.com
**ONE LLP**
9301 Wilshire Boulevard
Beverly Hills, California 90401
Telephone: (310) 866-5158
Facsimile: (310) 943- 2085

Joseph K. Liu (Bar No. 216227)
<jliu@onellp.com>
**ONE LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

*Attorneys for Plaintiff,*
*Secured Mail Solutions, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURED MAIL SOLUTIONS, LLC, | Case No. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES** |
| v. | |
| UNIVERSAL WILDE, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff, Secured Mail Solutions, LLC ("SMS"), alleges:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction of this case under 28 U.S.C. §§ 1338(a), because this case arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) in that a substantial part of the events giving rise to the claims occurred in this district.

SMS is informed and believes, and on that basis alleges, that Defendant, Universal Wilde, Inc. ("UW"), has a regular and established practice of business in this district and has committed acts of infringement in this district.

### THE PARTIES

2.      SMS is a limited liability company duly organized under the laws of the state of Nevada.  SMS also does business in this judicial district.

3.      SMS was founded by Todd Fitzsimmons to pursue the using and licensing of his inventions in the field of mail and mail information services and technology.  Mr. Fitzsimmons's inventions resulted in each of the seven United States patents that are asserted in this case.

3.      SMS is informed and believes, and on that basis alleges, that Defendant UW is a corporation duly organized and existing under the laws of the state of Massachusetts, with its principal place of business at 26 Dartmouth Street, Westwood, MA 02090.

4.      UW describes its business as "provid[ing] technology-enabled, data-driven marketing communication solutions from thought to distribution."  UW says on its website that its "full-service capabilities include offset and digital print – variable print and print-on-demand; direct mail services; automated fulfillment and distribution programs; and agency services."  UW further says that it "service[s] a wide range of industries including Financial Services, Healthcare, Pharmaceutical, Insurance, Education, Large Commercial and Retail."

5.      SMS alleges below that Defendant UW infringes numerous claims of SMS's seven patents in suit.

### SMS'S PATENTS AND UW'S INFRINGEMENT

#### Overview

6.      Todd Fitzsimmons is an electrical engineer and a patent attorney who previously worked in the shipping and courier industry.  After the September 11 terrorist attacks, and the anthrax attacks via U.S. mail thereafter, Mr. Fitzsimmons

began developing new technologies to identify, track, and provide information on mail objects, such as letters and packages.

7. On October 16, 2001, Mr. Fitzsimmons filed a provisional patent application, followed by a non-provisional patent application on October 15, 2002, and an ongoing series of continuation applications thereafter. After years of examination by the United States Patent and Trademark Office, Mr. Fitzsimmons has received the following seven patents, all of which he has assigned to SMS:

| Patent Number | Title | Issued | Copy Attached to Complaint as |
|---|---|---|---|
| 7,814,032 | SYSTEM AND METHOD FOR MAIL VERIFICATION | Oct. 12, 2010 | Exhibit A |
| 7,818,268 | SYSTEM AND METHOD FOR MAIL VERIFICATION | Oct. 19, 2010 | Exhibit B |
| 8,073,787 | SYSTEM AND METHOD FOR MAIL VERIFICATION | Dec. 6, 2011 | Exhibit C |
| 8,260,629 | SYSTEM AND METHOD FOR PROVIDING AN ADVERTISEMENT TO A RECIPIENT OF A PHYSICAL MAIL OBJECT | Sept. 4, 2012 | Exhibit D |
| 8,429,093 | SYSTEM AND METHOD FOR PROVIDING INFORMATION TO A RECIPIENT OF A PHYSICAL MAIL OBJECT | Apr. 23, 2013 | Exhibit E |
| 8,910,860 | SYSTEMS AND METHOD FOR PROVIDING INFORMATION TO A RECIPIENT OF A PHYSICAL MAIL OBJECT | Dec. 16, 2014 | Exhibit F |
| 9,105,002 | SYSTEM AND METHOD FOR PROVIDING INFORMATION TO A RECIPIENT OF A PHYSICAL MAIL OBJECT | Aug. 11, 2015 | Exhibit G |

8.      These seven patents in suit disclose and claim various systems and methods for processing, verifying, or authenticating mail data.  In some embodiments of the claimed inventions, mail data is affixed to a mail object and includes (or is linked to) information related to the mail object (for example, information on the sender of the mail object or the contents of the mail object).  This information can then be used by various individuals or entities (for example, a mailing service, a mail carrier, or a recipient) to ensure that the mail object is secure and can safely be processed, routed and opened.  In fact, the Patent Office granted special examination status to the application for U.S. Patent No. 7,818,268, because it related to "counter terrorism" technology that "reduces the risk of [a] terrorist attack."  In addition to ensuring safety and security of mail, mail data claimed in the patents in suit can be used by mailing services to more effectively process and route mail objects and can also be used by recipients to obtain additional information related to mail objects.

### Intelligent Mail Barcodes

9.      SMS's patents in suit contain claims that cover technology used by UW in connection with what the United States Postal Service calls "Intelligent Mail Barcodes" (IMb's).  The Postal Service adopted IMb's in 2009, long after Mr. Fitzsimmons invented the subject matters of the patents in suit and long after he filed his initial patent application in 2001.  SMS's patents containing claims related to IMb technology include U.S. Patents Nos. 7,814,032, 7,818,268, and 8,073,787 (collectively, the "IMb-Related Patents").

10.     One example of the IMb-Related Patents' claims, and UW's infringement of those patents, is provided by Claim 1 of U.S. Patent No. 7,818,268.  That claim reads as follows (with bracketed letters added for reference):

1.      A method of verifying mail identification data, comprising:

[a]     affixing mail identification data to at least one mail object, said mail identification data comprising a single set of encoded data that includes at least a unique identifier, sender data, recipient data and shipping method data, wherein

4

said unique identifier consists of a numeric value assigned by a sender of said at least one mail object;

**[b]** storing at least a verifying portion of said mail identification data;

**[c]** receiving by a computer at least an authenticating portion of said mail identification data from at least one reception device via a network, wherein said authenticating portion of said mail identification data comprises at least said sender data and said shipping method data; and

**[d]** providing by said computer mail verification data via said network when said authenticating portion of said mail identification data corresponds with said verifying portion of said mail identification data.

11. UW's own public documents and publications of the U.S. Postal Service show that UW is making, using, selling, and offering for sale a system and method for generating, storing, and processing mail identification data that infringes multiple claims of the IMb-Related Patents. For example, UW uses software and hardware ("IMb-Related Products") to generate various barcodes, including the Intelligent Mail barcode. The IMb-Related Products are then used to affix IMb's on mail objects and to store at least portions of the IMb's (together with related information) in a storage device. The IMb-Related Products are then used to interrogate the stored information, resulting in the communication of data (including verification data) over a network.

12. Comparing the operation of UW's IMb-Related Products to Claim 1 of the '268 Patent, SMS is informed and believes, and on that basis alleges, that these products are used to perform all the steps of the patented method, including:

**[a]** affixing mail identification data (an IMb) to at least one mail object, where the IMb is a single set of encoded data that includes at least a unique identifier (a serial number), sender data (a mailer identifier), recipient data (a delivery point ZIP code), and shipping method data (a service type identifier), wherein the unique identifier (serial number) consists of a numeric value assigned by a sender of the mail object;

5

**[b]** storing a verifying portion of the IMb;

**[c]** receiving an authenticating portion of the IMb from a reception device (for example, from a device operated by the USPS), wherein the second portion of the IMb includes at least sender data (the mailer identifier) and shipping method data (the service type identifier); and

**[d]** providing information on the mail object (such as mail verification data) when the authenticating portion of the IMb (the portion received from USPS) corresponds with the verifying portion of the IMb (the portion stored by UW).

13. SMS is informed and believes, and on that basis alleges, that UW directly uses the IMb-Related Products as described above, and UW is therefore directly infringing the IMb-Related Patents. SMS is also informed and believes, and on that basis alleges, that UW induces others to infringe the IMb-Related Patents and contributes to such infringement by others—for example, mail recipients, customers, or partners.

14. Evidence of such direct and indirect infringement can be found on UW's website, which says that UW offers "two levels of Intelligent Mail barcode service, Basic and Full," and that, "[w]ith Full Service, mail delivery status is tracked." UW says that its "[c]ustomer service teams can use real-time delivery knowledge to respond to customer calls, to update anxious customers on when outbound mail will arrive, or to see if the inbound check really is 'in the mail.'" UW says that it has "the software and the expertise to help," to generate "Standard and Customized Reporting" and to provide "Advanced Mail Tracking." Corresponding U.S. Postal Service specifications and user guides confirm that these services provided by UW entail the use of methods and products covered by SMS's IMb-Related Patents.

15. UW has been aware of the IMb-Related Patents and of SMS's contention that UW is directly and indirectly infringing them since at least August 18, 2015, but UW continues to use the IMb-Related Products to infringe the Asserted Patents.

6

16.     On August 17, 2015, counsel for SMS sent a letter to UW identifying the patents in suit and the infringing activities of UW.  A true and correct copy of this letter, which was delivered to UW on August 18, 2015, is Exhibit H to this Complaint. This letter notified UW that it was "making, using, selling, and offering for sale a system and method for generating, storing, and processing mail identification data that infringes multiple claims of the IMb-Related Patents under 35 U.S.C. Section 271.  For example, Universal Wilde uses software and hardware ('IMB-Related Products') to generate various barcodes, including the Intelligent Mail barcode ('IMb').  The IMb-Related Products are then used to affix IMbs on mail objects and to store at least portions of the IMbs (together with related information) in a storage device.  The IMb-Related Products are then used to interrogate the stored information, resulting in the communication of data (including verification data) over a network."

## Personalized Quick Response Codes

17.     SMS's patents in suit contain claims that cover technology used by UW in connection with personalized quick response (QR) codes.  The mail industry's use of QR codes began in 2007, long after Todd Fitzsimmons invented the subject matters of the patents in suit and long after he filed his initial patent application in 2001.  SMS's patents containing claims related to QR code technology include U.S. Patents Nos. 8,260,629 and 8,429,093 (collectively, the "QR-Related Patents").

18.     One example of the QR-Related Patents' claims, and UW's infringement of those patents, is provided by Claim 1 of U.S. Patent No. 8,429,093.  That claim reads as follows (with bracketed letters added for reference):

1.      A method for providing electronic data to a recipient of a mail object, comprising:

[a]     Generating, by a processor, a barcode for a mail object, said barcode including at least a first set of mail data, said first set of mail data including data corresponding to said recipient of said mail object;

[b]     affixing said barcode to said mail object;

7

**[c]**　　submitting said mail object to a mail carrier for delivery to said recipient of said mail object;

**[d]**　　receiving said first set of mail data, including data corresponding to said recipient of said mail object, from a reception device of said recipient via a network;

**[e]**　　providing said electronic data to said reception device via said network in response to receiving said first set of mail data, said electronic data including a content of said mail object;

**[f]**　　 wherein said reception device displays said electronic data to a recipient of said mail object by displaying said electronic data on a screen of said reception device.

19.　　UW's own public documents show that UW is making, using, selling, and offering for sale a system and method for generating, affixing, and processing mail data that infringes multiple claims of SMS's QR-Related Patents. For example, UW uses hardware and software ("QR-Related Products") to generate personalized (or variable) QR codes. The QR-Related Products are then used to affix each personalized QR code onto a mail object and store related electronic data in a storage device. Then, the QR-Related Products are used to provide the related electronic data to a reception device (such as a smart phone or tablet) in response to the reception device scanning the personalized QR code on the mail object.

20.　　Comparing the operation of UW's QR-Related Products to Claim 1 of the '093 Patent, SMS is informed and believes, and on that basis alleges, that these products are used to perform all the steps of the patented method, including:

**[a]**　　generating a barcode that includes data corresponding to a recipient of a mail object (the QR code, with a personalized network location corresponding to a recipient of a mail object),

**[b]**　　affixing the QR code on the mail object (such as a letter or package),

**[c]**　　submitting the mail object to a mail carrier (the USPS) for delivery to the

COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES

recipient,

**[d]** receiving the data corresponding to a recipient of a mail object (the QR code) via a network (for example, the Internet) from a reception device (such as a smart phone or tablet) operated by the recipient, and

**[e]** providing electronic data to the reception device via the network in response to receiving the QR code, said electronic data including a content of the mail object (for example, references to the recipient and subject matter of the mail),

**[f]** wherein said reception device displays the data to a recipient by displaying it on a screen of the reception device (such as the screen of a smart phone or tablet).

21. SMS is informed and believes, and on that basis alleges, that UW directly uses the QR-Related Products as described above, and UW is therefore directly infringing the QR-Related Patents. SMS is also informed and believes, and on that basis alleges, that UW induces others to infringe the QR-Related Patents and contributes to such infringement by others—for example, mail recipients, customers, or partners. UW does this, for example, by inducing customers and mail recipients to participate in a personalized QR code program (for example, inducing customers to store the electronic data in a storage device and provide the electronic data to the reception device, and inducing recipients to scan the personalized QR codes).

22. Evidence of such direct and indirect infringement can be found on UW's website, which says that UW's "[v]ariable 2D codes [are] interactive codes [that] can contain links that automatically send users to a specific website" and can be used to provide "[p]roduct traceability when combined with variable data." UW's website further says that "Universal Wilde can produce QR codes for inclusion on personalized print" and "can produce QR codes for unique or general URLs." The website says that "[a]dding QR codes to printed materials means one more avenue Universal Wilde can use to provide value. It's another way we help you achieve a better return on

**COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES**

investment for your marketing dollars."

23.     UW has been aware of the QR-Related Patents and of SMS's contention that UW is directly and indirectly infringing them since at least August 18, 2015, but UW continues to use the QR-Related Products to infringe the Asserted Patents.

24.     On August 17, 2015, counsel for SMS sent a letter to UW (Exhibit H to this Complaint) identifying the patents in suit and the infringing activities of UW. This letter notified UW that it was "making, using, selling, and offering for sale a system and method for generating, affixing, and processing mail data that infringes multiple claims of SMS's QR-Related Patents.  For example, Universal Wilde uses software and hardware ('QR-Related Products') to generate personalized (or variable) quick response ('QR') codes.  The QR-Related Products are then used to affix each personalized QR code onto a mail object and store related electronic data in a storage device.  The QR-Related Products are then used to provide the related electronic data to a reception device (such as a smart phone or tablet) in response to the reception device scanning the personalized QR code on the mail object."

### Personalized Universal Resource Locators

25.      SMS's patents in suit contain claims that cover technology used by UW in connection with personalized uniform resource locators (pURLs).  The mail industry's use of pURLs began long after Todd Fitzsimmons invented the subject matters of the patents in suit and long after he filed his initial patent application in 2001.  SMS's patents containing claims related to pURL technology include U.S. Patents Nos. 8,910,860 and 9,105,002 (collectively, the "pURL-Related Patents").

26.     One example of the pURL-Related Patents' claims, and UW's infringement of those patents, is provided by Claim 1 of U.S. Patent No. 9,105,002. That claim reads as follows (with bracketed letters added for reference):

1. A method for providing electronic data to a recipient of a mail object, comprising:

[a]     using an output device to affix a single set of mail ID data to said mail

object, said single set of mail ID data including at least recipient data, said recipient data comprising a personalized network address associated with said recipient of said mail object;

**[b]**    submitting said mail object to a mail carrier for delivery to said recipient of said mail object;

**[c]**    receiving said recipient data from a reception device of said recipient via a network; and

**[d]**    providing by at least one processor said electronic data to said reception device via said network in response to receiving said recipient data, said electronic data comprising a sender's web page that identifies said recipient of said mail object and includes data corresponding to a content of said mail object;

**[e]**    wherein said electronic data is configured to be displayed to said recipient via a web browser on a display of said reception device.

27.    UW's own public documents show that UW is making, using, selling, and offering for sale a system and method for generating, affixing, and processing mail data that infringes multiple claims of SMS's pURL-Related Patents.  For example, UW uses hardware and software ("pURL-Related Products") to generate variable data, including pURLs.  The pURL-Related Products are then used to affix each pURL onto a mail object and store related electronic data in a storage device.  The pURL-Related Products are also used to provide the related electronic data to a reception device (such as a smart phone, tablet, or computer) in response to entry of the pURL into the reception device.

28.    Comparing the operation of UW's pURL-Related Products to Claim 1 of the '002 Patent, SMS is informed and believes, and on that basis alleges, that these products are used to perform all the steps of the patented method, including:

**[a]**    using an output device (such as a printer) to affix to a mail object (such as a letter or package) a single set of mail ID data (a Uniform Resource Locator, or "URL") that includes recipient data including a personalized network address

("pURL") associated with a recipient of a mail object,

**[b]** submitting the mail object to a mail carrier (such as the U.S. Postal Service) for delivery to the recipient,

**[c]** receiving recipient data from a reception device (such as a smart phone, tablet, or computer) as part of a request for electronic data associated with the personalized network location, and

**[d]** providing the electronic data, using a processor such as a computer, to the reception device,

**[e]** wherein the electronic data (such as the contents of a web page) includes data on a content of the mail object (such as references to the recipient and subject matter of the mail) and is configured to be displayed via a web browser on a screen of the reception device (such as the screen of a smart phone, tablet, or computer).

29. SMS is informed and believes, and on that basis alleges, that UW directly uses the pURL-Related Products as described above, and UW is therefore directly infringing the pURL-Related Patents. SMS is also informed and believes, and on that basis alleges, that UW induces others to infringe the pURL-Related Patents and contributes to such infringement by others—for example, mail recipients, customers, or partners. UW does this, for example, by inducing customers and recipients to participate in a pURL program (such as by inducing customers to store the electronic data in a storage device and provide the electronic data to the reception device, and inducing recipients to enter the pURL into a reception device).

30. Evidence of such direct and indirect infringement can be found on UW's website, which says, "Universal Wilde, through our Xccelerate system, can offer personalized websites to capture direct mail or email responses. As an alternative to a BRC, a Personalized URL (PURL), an invitation-only marketing website, allows immediate collection of responses from a campaign." UW's website further says that "[t[hese sites are convenient to use and can be personalized for the user with images

and text. … With PURLs you can deliver different products and offers based on the individual responder, helping you target response more effectively." According to the website, "The resulting PURL is hosted on-line by Xccelerate. Web links are generated by merging the contacts name and the customer-supplied web address. The name in the address (SamSmith.youraddress.com) identifies who is visiting the site, triggering the keywords to personalize the page." UW tells customers that they can "[c]ombine Xccelerate PURL technology with your direct mail strategy to create effective marketing that maximizes your marketing dollars and improves your ROI."

31.     UW has been aware of the pURL-Related Patents and of SMS's contention that UW is directly and indirectly infringing them since at least August 18, 2015, but UW continues to use the pURL-Related Products to infringe the Asserted Patents.

32.     On August 17, 2015, counsel for SMS sent a letter to UW (Exhibit H to this Complaint) identifying the patents in suit and the infringing activities of UW. This letter notified UW that it was "making, using, selling, and offering for sale a system and method for generating, affixing, and processing mail data that infringes multiple claims of SMS's pURL-Related Patents. For example, Universal Wilde is using certain hardware and software ('pURL-Related Products') to generate variable data, including personalized Universal Resource Locators ('pURLs'). The pURL-Related Products are then used to affix each pURL onto a mail object and store related electronic data in a storage device. The pURL-Related Products are also used to provide the related electronic data to a reception device (such as a smart phone, tablet, or computer) in response to entry of the pURL into the reception device."

///

///

///

## FIRST CLAIM FOR RELIEF

## (Infringement of U.S. Patent No. 7,814,032)

33.    SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

34.    On October 12, 2010, United States Patent No. 7,814,032 ("the '032 Patent") was duly and legally issued, entitled "System and Method for Mail Verification."  SMS was assigned the '032 Patent and continues to hold all rights, title, and interest in and to the '032 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages.  A true and correct copy of the '032 Patent is Exhibit A to this Complaint.

35.    UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '032 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the IMb-Related Products.

36.    SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '032 Patent.  SMS is informed and believes, and on that basis alleges, that the '032 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the IMb-Related Products.  SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '032 Patent.  On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '032 Patent with specific intent to induce and

14

encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

37.     SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '032 Patent by selling, offering to sell, supplying, maintaining, and supporting IMb-Related Products that directly infringe the '032 Patent when used by UW's customers and their transaction partners.  SMS is informed and believes, and on that basis alleges, that the '032 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using IMb-Related Products, mail recipients, and partners.  These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  On information and belief, UW has contributed, and will continue to contribute, to infringement of the '032 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '032 Patent.

38.     SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1-4, 8-15, and 19-22 of the '032 Patent.

39.     As a direct and proximate consequence of UW's infringement of the '032 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law.  SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '032 Patent.

40.     UW has had actual notice of the '032 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '032 Patent.  SMS is informed and believes, and on that basis alleges, that UW's infringement is willful and warrants treble damages or other enhanced damages

as well as an award of SMS's attorneys' fees and litigation expenses.

## SECOND CLAIM FOR RELIEF

## (Infringement of U.S. Patent No. 7,818,268)

41.     SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

42.     On October 19, 2010, United States Patent No. 7,818,268 ("the '268 Patent") was duly and legally issued, entitled "System and Method for Mail Verification."  SMS was assigned the '268 Patent and continues to hold all rights, title, and interest in and to the '268 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages.  A true and correct copy of the '268 Patent is Exhibit B to this Complaint.

43.     UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '268 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the IMb-Related Products.

44.     SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '268 Patent.  SMS is informed and believes, and on that basis alleges, that the '268 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the IMb-Related Products.  SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '268 Patent.  On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a

manner that directly infringes the '268 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

45.     SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '268 Patent by selling, offering to sell, supplying, maintaining, and supporting IMb-Related Products that directly infringe the '268 Patent when used by UW's customers and their transaction partners.  SMS is informed and believes, and on that basis alleges, that the '268 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using IMb-Related Products, mail recipients, and partners.  These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  On information and belief, UW has contributed, and will continue to contribute, to infringement of the '268 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '268 Patent.

46.     SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1-3, 5-12, 16, 33-36, 39-42, and 44-45 of the '268 Patent.

47.     As a direct and proximate consequence of UW's infringement of the '268 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law.  SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '268 Patent.

48.     UW has had actual notice of the '268 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '268 Patent.  SMS is informed and believes, and on that basis alleges, that

UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,073,787)

49.     SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

50.     On December 6, 2011, United States Patent No. 8,073,787 ("the '787 Patent") was duly and legally issued, entitled "System and Method for Mail Verification." SMS was assigned the '787 Patent and continues to hold all rights, title, and interest in and to the '787 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages.  A true and correct copy of the '787 Patent is Exhibit C to this Complaint.

51.     UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '787 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the IMb-Related Products.

52.     SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '787 Patent.  SMS is informed and believes, and on that basis alleges, that the '787 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the IMb-Related Products.  SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '787 Patent.  On information and belief, UW has actively induced and encouraged, or will

continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '787 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

53. SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '787 Patent by selling, offering to sell, supplying, maintaining, and supporting IMb-Related Products that directly infringe the '787 Patent when used by UW's customers and their transaction partners. SMS is informed and believes, and on that basis alleges, that the '787 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using IMb-Related Products, mail recipients, and partners. These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use. On information and belief, UW has contributed, and will continue to contribute, to infringement of the '787 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '787 Patent.

54. SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1-6, 13, 30-32, 34, 35, and 41-49 of the '787 Patent.

55. As a direct and proximate consequence of UW's infringement of the '787 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law. SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '787 Patent.

56. UW has had actual notice of the '787 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to

infringe the '787 Patent. SMS is informed and believes, and on that basis alleges, that UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### FOURTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,260,629)

57. SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

58. On September 4, 2012, United States Patent No. 8,260,629 ("the '629 Patent") was duly and legally issued for an invention entitled "System and Method for Providing an Advertisement to a Recipient of a Physical Mail Object." SMS was assigned the '629 Patent and continues to hold all rights, title, and interest in and to the '629 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages. A true and correct copy of the '629 Patent is Exhibit D to this Complaint.

59. UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '629 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the QR-Related Products.

60. SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '629 Patent. SMS is informed and believes, and on that basis alleges, that the '629 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the QR-Related Products. SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '629

Patent. On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '629 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

61. SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '629 Patent by selling, offering to sell, supplying, maintaining, and supporting QR-Related Products that directly infringe the '629 Patent when used by UW's customers and their transaction partners. SMS is informed and believes, and on that basis alleges, that the '629 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using QR-Related Products, mail recipients, and partners. These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use. On information and belief, UW has contributed, and will continue to contribute, to infringement of the '629 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '629 Patent.

62. SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1, 3-5, 10, 12, and 17-19 of the '629 Patent.

63. As a direct and proximate consequence of UW's infringement of the '629 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law. SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '629 Patent.

**COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES**

64. UW has had actual notice of the '629 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '629 Patent. SMS is informed and believes, and on that basis alleges, that UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### FIFTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,429,093)

65. SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

66. On April 23, 2013, United States Patent No. 8,429,093 ("the '093 Patent") was duly and legally issued, entitled "System and Method for Providing Information to a Recipient of a Physical Mail Object." SMS was assigned the '093 Patent and continues to hold all rights, title, and interest in and to the '093 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages. A true and correct copy of the '093 Patent is Exhibit E to this Complaint.

67. UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '093 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the QR-Related Products.

68. SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '093 Patent. SMS is informed and believes, and on that basis alleges, that the '093 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the QR-Related Products. SMS is informed and believes, and on that basis alleges, that

UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '093 Patent. On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '093 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

69. SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '093 Patent by selling, offering to sell, supplying, maintaining, and supporting QR-Related Products that directly infringe the '093 Patent when used by UW's customers and their transaction partners. SMS is informed and believes, and on that basis alleges, that the '093 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using QR-Related Products, mail recipients, and partners. These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use. On information and belief, UW has contributed, and will continue to contribute, to infringement of the '093 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '093 Patent.

70. SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1-5, 8-13, 18-23, and 26-28 of the '093 Patent.

71. As a direct and proximate consequence of UW's infringement of the '093 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law. SMS is entitled to damages from UW as well as preliminary and permanent injunctive

relief against further infringement of the '093 Patent.

72.    UW has had actual notice of the '093 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '093 Patent.  SMS is informed and believes, and on that basis alleges, that UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### SIXTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,910,860)

73.    SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

74.    On December 16, 2014, United States Patent No. 8,910,860 ("the '860 Patent") was duly and legally issued, entitled "System and Method for Providing Information to a Recipient of a Physical Mail Object."  SMS was assigned the '860 Patent and continues to hold all rights, title, and interest in and to the '860 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages.  A true and correct copy of the '860 Patent is Exhibit F to this Complaint.

75.    UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '860 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the pURL-Related Products.

76.    SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '860 Patent.  SMS is informed and believes, and on that basis alleges, that the '860 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by UW's customers using the

pURL-Related Products.  SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '860 Patent.  On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '860 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

77.    SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '860 Patent by selling, offering to sell, supplying, maintaining, and supporting pURL-Related Products that directly infringe the '860 Patent when used by UW's customers and their transaction partners.  SMS is informed and believes, and on that basis alleges, that the '860 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using pURL-Related Products, mail recipients, and partners.  These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  On information and belief, UW has contributed, and will continue to contribute, to infringement of the '860 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '860 Patent.

78.    SMS is informed and believes, and on that basis alleges, that the claims directly or indirectly infringed by UW include, without limitation, Claims 1-4, 7-13, 16-18, 20-23, 25-27, and 29-30 of the '860 Patent.

79.    As a direct and proximate consequence of UW's infringement of the '860 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet determined, as well as irreparable injury for which it has no adequate remedy at law.

SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '860 Patent.

80.    UW has had actual notice of the '860 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '860 Patent.  SMS is informed and believes, and on that basis alleges, that UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### SEVENTH CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 9,105,002)

81.    SMS repeats and realleges the allegations of Paragraphs 1-32 as if fully set forth here.

82.    On August 11, 2015, United States Patent No. 9,105,002 ("the '002 Patent") was duly and legally issued, entitled "System and Method for Providing Information to a Recipient of a Physical Mail Object."  SMS was assigned the '002 Patent and continues to hold all rights, title, and interest in and to the '002 Patent, including, without limitation, all causes of action and enforcement rights and all rights to seek and obtain any remedies of any kind for past, current, and future infringement of the patent, including injunctive relief and the right to sue for past damages.  A true and correct copy of the '002 Patent is Exhibit G to this Complaint.

83.    UW has directly infringed, is currently directly infringing, and, on information and belief will continue to directly infringe one or more claims of the '002 Patent by making, using, offering to sell, and selling within the United States, or importing into the United States, the pURL-Related Products.

84.    SMS is informed and believes, and on that basis alleges, that UW has actively induced and encouraged and currently is actively inducing and encouraging infringement of the '002 Patent.  SMS is informed and believes, and on that basis alleges, that the '002 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States –

COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES

including, on information and belief, within this district – by UW's customers using the pURL-Related Products.  SMS is informed and believes, and on that basis alleges, that UW actively encourages that infringement by advertising, promoting and instructing its customers in the use of these products in a manner that directly infringes the '002 Patent.  On information and belief, UW has actively induced and encouraged, or will continue to actively induce and encourage, its customers' use of these products in a manner that directly infringes the '002 Patent with specific intent to induce and encourage such infringement, or at a minimum with willful blindness to the known risk of such infringement.

85.  SMS is informed and believes, and on that basis alleges, that UW has contributed and is currently contributing to the infringement of the '002 Patent by selling, offering to sell, supplying, maintaining, and supporting pURL-Related Products that directly infringe the '002 Patent when used by UW's customers and their transaction partners.  SMS is informed and believes, and on that basis alleges, that the '002 Patent has been directly infringed, is currently being directly infringed, and will continue to be directly infringed within the United States – including, on information and belief, within this district – by others, including UW's customers using pURL-Related Products, mail recipients, and partners.  These products are especially made or adapted for infringing use, and they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  On information and belief, UW has contributed, and will continue to contribute, to infringement of the '002 Patent with the knowledge that the systems and methods for which its products were especially made infringe the '002 Patent.

86.  SMS is informed and believes, and on that basis alleges, that the claims infringed by UW include, without limitation, Claims 1-3, 6-10, 12-14, and 16-20 of the '002 Patent.

87.  As a direct and proximate consequence of UW's infringement of the '002 Patent, SMS has suffered and will continue to suffer damages, in an amount not yet

determined, as well as irreparable injury for which it has no adequate remedy at law. SMS is entitled to damages from UW as well as preliminary and permanent injunctive relief against further infringement of the '002 Patent.

88.     UW has had actual notice of the '002 Patent and SMS's infringement contentions since at least August 18, 2015, but, despite such notice, has continued to infringe the '002 Patent.  SMS is informed and believes, and on that basis alleges, that UW's infringement and warrants treble damages or other enhanced damages as well as an award of SMS's attorneys' fees and litigation expenses.

### RELIEF REQUESTED

SMS requests the following relief:

1.     Judicial determinations and declarations that UW has directly infringed, and continues to directly infringe, each of SMS's patents in suit (U.S. Patents Nos. 7,814,032, 7,818,268, 8,073,787, 8,260,269, 8,429,093, 8,910,860, and 9,105,002);

2.     Judicial determinations and declarations that UW has induced, and continues to induce, infringement of each of SMS's patents in suit;

3.     Judicial determinations and declarations that UW has contributorily infringed, and continues to contributorily infringe, each of SMS's patents in suit;

4.     Preliminary and permanent injunctions prohibiting UW, its subsidiaries, officers, agents, servants, employees, and licensees, and all persons or entities acting or attempting to act in active concert or participation with them, or acting on their behalf, from infringing any of SMS's patents in suit;

5.     An order requiring that UW notify all of its customers, vendors and users of the infringement and their participation in it, recall all infringing products, and cause and encourage its customers, vendors, and users to cease infringing;

6.     Judgment for all damages caused by UW's infringement and for not less than a reasonable royalty for all such infringement, in accordance with 35 U.S.C. Section 284;

7. Treble damages, or other enhanced damages, under 35 U.S.C. Section 284;

8. That this be declared an exceptional case, and that UW be awarded its attorneys' fees and litigation expenses under 35 U.S.C. Section 285;

9. That UW be awarded its costs of suit;

10. Pre-judgment and post-judgment interest on all damages and other amounts awarded to UW; and

11. Such other and further relief as the Court deems just and proper.

Dated: September 25, 2015                    Respectfully submitted,

                                             **One LLP**


                                             /s/ William O'Brien
                                             William J. O'Brien


                                             *Attorneys for Plaintiff,*
                                             *Secured Mail Solutions, LLC*

COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES

**JURY DEMAND**

Under Rule 38(b) of the Federal Rules of Civil Procedure, SMS requests a trial by jury on all issues properly triable by jury.

Dated: September 25, 2015                    Respectfully submitted,


**One LLP**


_____
/s/ William O'Brien
William J. O'Brien


*Attorneys for Plaintiff,*
*Secured Mail Solutions, LLC*

**COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES**

# EXHIBITS TO COMPLAINT

A.   U.S. Patent No. 7,814,032

B.   U.S. Patent No. 7,818,268

C.   U.S. Patent No. 8,073,787

D.   U.S. Patent No. 8,260,629

E.   U.S. Patent No. 8,429,093

F.   U.S. Patent No. 8,910,860

G.   U.S. Patent No. 9,105,002

H.   Letter dated August 17, 2015, from One LLP to Universal Wilde, Inc.

COMPLAINT FOR PATENT INFRINGEMENT, INJUNCTION, AND DAMAGES