UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PHILIPS NORTH AMERICA LLC,

            Plaintiff,

   v.

FITBIT, INC.,

            Defendant.

Civil Action No. 1:19-cv-11586-IT

## SUPPLEMENTAL JOINT STATUS REPORT

After the Scheduling Hearing, pursuant to the Court's request, Fitbit contacted Philips

regarding scheduling.  Among other things, the parties met and conferred concerning a procedure

for addressing Fitbit's Motion for Partial Summary Judgment of Invalidity under 35 U.S.C. §112

directed to one claim element of the '007 patent[1] ("MSJ motion"). Dkt. 44.  However, the parties

have been unable to agree on an approach for resolving Fitbit's indefiniteness arguments in this

case.

### Fitbit's introductory statement

Fitbit's counsel can sum up the actions requested from the Court in this document as

follows:

- Fitbit does not want to divert the Court from what Fitbit believes is the best use of judicial resources of this Court: determination that the asserted claims of the patents in suit are patent ineligible as abstract ideas. Fitbit requests a hearing on its case-dispositive motion to dismiss at the Court's convenience.

- Fitbit properly filed its MSJ motion that is distinct from run-of-the-mill claim construction issues. The claims of the '007 patent are indefinite—there is no cure for that.  It involves a legal issue that is cabined by the four corners of the specification. As the motion makes clear, resort to expert testimony or extrinsic evidence cannot be used to

---

[1] Fitbit expressly previewed this MSJ motion in the initial case management Joint Statement filed November 25, 2019 (Dkt 23 p.4.)

remedy the unique legal flaw.[2]  The 15 page, concise motion should be granted and a hearing is not necessary unless the Court desires. However, Fitbit does not want the MSJ motion to detract the Court from the pending motions to dismiss.

- Fitbit needs additional time to comply with the local patent rule document production due to the amount of legacy products at issues.  Fitbit will have code available for inspection pursuant to the protective order and will produce the majority of documents by the current deadline. Fitbit will make available any additional code or produce additional documents on a rolling basis as soon thereafter as practicable.

**Philips' introductory statement**

Philips opposes supplemental briefing of a single indefiniteness argument while claim

construction proceeds in parallel, especially when Fitbit has suggested that it has ***other***

indefiniteness arguments that it apparently plans to raise—separately briefing all these issues is

the opposite of the "streamlining" that Fitbit suggests would be obtained by separately briefing

its motion—and the suggestion that claim construction is irrelevant to Fitbit's indefiniteness

arguments runs counter to both logic and Federal Circuit precedent.[3]  Fitbit is also wrong in

arguing that expert testimony is irrelevant to indefiniteness.  First, it can be relevant to claim

construction, which would inherently weigh on indefiniteness.  Second, both Federal Circuit and

this district have stressed that whether a means-plus-function claim is supported by the

specification is a question to be considered from the perspective of a person of ordinary skill in

---

[2] Dkt. 44, p. 7 ("Indeed, 'the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification.'" *quoting Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A.,* 412 F.3d 1291, 1302–03 (Fed. Cir. 2005)).

[3] *See Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1319 (Fed. Cir. 2003) ("Once a court establishes that a means-plus-function limitation is at issue, it must identify and construe that limitation, thereby determining what the claimed function is, and what structures disclosed in the written description correspond to the 'means' for performing that function.")

the art and have relied on expert testimony—including when determining whether any

algorithms (if necessary) are disclosed.[4]

There is little merit to Fitbit's argument that its MSJ argument is wholly separate from

claim construction, or that separately briefing the issue would be the most efficient way to

proceed.   Philips suggests that all the claim construction issues should be raised in an orderly

and efficient manner through the already scheduled claim construction process.

With respect to the Motion to Dismiss, Philips believes that the Court has more than

sufficient information and does not need a hearing on a matter that is focused on the pleadings,

which are to be taken as true at this stage of the litigation.

With regard to Fitbit's request for additional time to produce documents in accordance

with the local rules, Fitbit

An explanation of the parties' positions follow.  For the Court's convenience, Exhibit A

includes a table summarizing the parties' positions.

## Explanation of the Parties' Positions

### 1. MSJ Motion

#### a. Fitbit's Position

Fitbit's position is simple: briefing for the pending MSJ motion should be completed with

a two-week extension and heard at the Court's convenience.  Fitbit has no objection to the

hearing occurring on the same day as the *Markman* hearing (August 6) or at an earlier time if the

---

[4] *See, e.g., AllVoice Computing PLC v. Nuance Comms., Inc.*, 504 F.3d 1236, 1245-1246 (Fed. Cir. 2007) and *Michael Sandborn & Mark Sandborn Partnership v. Avid Tech., Inc.*, 53 F.Supp.3d 468, 481-482 (D. Mass. 2014).

4845-2843-1033.6

Court prefers.[5]  Indeed, a ruling in Fitbit's favor would moot the need for the Court to even

consider any other claim construction issues on the '007 patent.

     Fitbit's proposal also provides the Court with the opportunity to delay consideration of

the MSJ motion to focus exclusively on the pending, case dispositive Motion to Dismiss.  The

Motion to Dismiss demonstrates that the patents-in-suit are directed to patent-ineligible subject

matter.  Fitbit respectfully submits that resolution of this case dispositive motion would be the

most efficient use of the Court's resources for this case.

     With respect to the MSJ motion, Fitbit filed it and Philips should respond to it (rather

than trying to evade it).  At just 15 pages in length, the MSJ motion succinctly demonstrates that

the specification of the '007 patent fails to disclose an algorithm for a single means-plus-function

claim element present in all asserted claims.  As detailed in the MSJ motion, this failure to

disclose cannot be cured by extrinsic evidence or expert testimony and renders each asserted

claim invalid under 35 U.S.C. 112.[6]

---

[5] Fitbit acknowledges that the timing that it is proposing now differs from arguments it made at the status conference on March 24.  In the context of explaining the rationale for the timing of the filing of the MSJ motion, Fitbit was mistaken in its belief that the IPR bar date was July 22, 2020 (one year from the filing of the Complaint). Thus, in light of *Samsung v. Prisua*, 948 F.3d 1342, 1350 (Fed. Cir. 2020), which many in the IP community believe impacts IPR practice, Fitbit believed that it was imperative to get a ruling on the MSJ before July 22, 2020.  Indeed, there are currently CLE's being offered addressing the impact of *Samsung* on IPR practice.  *See* IPO'S IP CHAT CHANNEL™: Indefiniteness After *Samsung v. Priusa* (attached as Exhibit B). However, the Complaint was actually served months after its filing date. The correct IPR bar is actually October 2, 2019 (one year from the date of service), a fact that none of the parties appreciated until after the status conference. And in contrast to Philips' representations here suggesting the Samsung case did not affect IPR practice, the decision is the sole topic of one of only four posts this year on Foley & Lardner's (counsel for Philips) own "PTAB Trial Insights" blog. *See* https://www.foley.com/en/insights/blogs/ptab-trial-insights ("PTAB Cannot Invalidate Challenged Claims for Indefiniteness in an IPR"), last accessed April 2, 2020 (attached as Exhibit C).

[6] Dkt. 44, p. 7.

4845-2843-1033.6

Rather than respond to the MSJ motion, even when Fitbit offered it a briefing extension, Philips seeks to avoid the motion entirely by asking this Court to dismiss it without prejudice. Philips' proposal requires Fitbit to raise the issues from its MSJ motion within later claim construction briefing.  In proposing this, Philips is trying to force Fitbit to make truncated arguments in a page-limited, omnibus claim construction brief.[7]  This proposal will deprive Fitbit of the chance to make (and the Court to hear) its complete argument on the issue and runs counter to the goals of summary judgment of streamlining cases.

The possibility that Fitbit may raise other, non-dispositive indefiniteness arguments in connection with claim construction on the four patents-in-suit should not deprive it of the opportunity to present fulsome dispositive arguments on the '007 patent.[8]  Fitbit did not ask to be sued on so many patents, Philips made that choice.  There is no legal basis for the relief Philips seeks.  Indeed, its request appears to be yet another example of the vexatious litigation strategy that Philips is employing against Fitbit.[9]

---

[7] Pursuant to L L.R. 7.1(b)(4), absent leave of Court, claim construction briefs are limited to 20 pages.  Philips has not offered to extend the page limit in an amount consistent with the length of the MSJ motion.  Furthermore, in the introductory section of this Joint Statement, Philips characterizes the briefing on the MSJ motion as "supplemental" briefing in a further attempt to justify subsuming it within claim construction briefing.  However, the briefing is not "supplemental," it is briefing on a properly, independent motion for summary judgment.

[8] Philips' assertion below that there may be "serial (and potentially endless) motions for partial summary judgment on purportedly discrete indefiniteness issues" lacks any basis.  Fitbit has and will continue to be respectful of the Court's time and resources as it defends itself against serial litigation from Philips.

[9] The case at bar is but one of many actions brought by Philips in its serial litigation campaign in multiple venues against Fitbit to increase its bargaining leverage.  Philips' current Complaint asserts four patents, three of which have expired and one soon to expire. Dkt. 23 at p.1. Foreign counterparts to three of the asserted patents in this Complaint were already found invalid in proceedings in Europe before Philips filed the Complaint in this action. *Id.* at p.8. When Fitbit filed the Motion to Dismiss in this case, Philips made a dramatic pivot and responded by filing an ITC Investigation on three totally different patents (which they could have filed on the same patents in suit as in the case before this Court but did not), with the hearing set for October 5, 2020. Philips has since filed another infringement action, this time in Germany on

Philips has chosen to cite numerous cases below concerning the MSJ motion.  It is unclear why.  None of them prohibits a pending, patent-dispositive MSJ motion from going forward in parallel with the claim construction process.  Fitbit is aware of no other authority that prohibits it.  Indeed, some Court's specifically allow construction of important claim terms to be considered separately from the general claim construction process.[10]

Philips' proposal actually complicates the claim construction process by delaying a stand-alone issue on a single claim element that could be briefed and considered by the Court on an extended timeline into a more compressed period, with less pages available for briefing.  On the other hand, Fitbit's proposal provides Philips with additional time to prepare a response to the SJM motion, and additional time for the Court and staff to consider the motion, without placing analysis of the briefing for the SJM motion in the midst of the analysis of briefing of claim construction for all other patents.

---

a single patent that will expire in 9 months. Fitbit perceives Philips' litigation and commensurate settlement strategy over the past several years of serial (and unsuccessful) litigation against both Fitbit and, fellow competitor, Garmin (Garmin has a parallel case to this one in the Central District of California and also is a Respondent in the ITC action) in the United States and Europe as having one primary goal:  drive up litigation costs irrespective of the merits of any case.  Indeed Philips' actions made is necessary for Fitbit to file a declaratory judgment action against Philips in N.D. Cal. on April 2, 2020, seeking a judgment that the patents asserted are not infringed because the expected ruling in the ITC of non-infringement is not binding on the District Court.

[10] In the District of Delaware, Chief Judge Stark's Case Management Checklist asks, "Should the Court consider a "super-early" limited claim construction hearing on those most important terms?" (Exhibit D); *see also Glob. Sessions LP v. Travelocity.com, LP et al.*, 2011 U.S. Dist. LEXIS 155901 (E.D. Tex. Aug. 18, 2011) (inviting a defendant to submit a letter brief requesting the court to construe no more than three case-dispositive terms and noting that the court would then hold "an early Markman hearing on the identified case dispositive terms . . . . If the case is not resolved following the Court's claim construction summary judgment rulings, a Markman hearing, as set forth in the Docket Control Order or at the patent status conference, will occur as scheduled.")

### b. Philips's Position

Philips's position is that Fitbit's Motion (Dkt. 43) be **denied without prejudice** to be raised in the context of claim construction, and that **Fitbit identify all indefiniteness arguments with its initial exchange of terms for claim construction**, as that would be the most efficient and orderly way to proceed.

Fitbit's revised position since the Court's Scheduling Conference is that combining a hearing on its indefiniteness motion with the scheduled *Markman* hearing would be appropriate, in part because the deadline for filing of IPRs is not until October (and not in July as Fitbit incorrectly stated during the March 24th conference).[11]  This is a striking reversal from Fitbit's original demand that the Court take up its 112 motion with dispatch, not only because of the asserted (and incorrect) July deadline, but also because of an unsubstantiated claim that it only recently learned that it could not file IPRs if the claims were indefinite (which is also not correct).[12]  Regardless, Fitbit appears to have walked away from those arguments, however, still

---

[11] Fitbit explains that it was not made aware of this error until March 28th, which is the day that counsel for Philips explained via e-mail that the deadline was in October and not July.  Fitbit also suggests that both parties failed to appreciate the true deadline.  That is not true. Fitbit raised the incorrect date for the first time at the scheduling conference, and counsel for Philips presumed that counsel had miss-spoken.  Since Fitbit's primary justification for needing to file its MSJ when it did was the alleged (but non-existent) change in practice before the PTAB caused by the Federal Circuit's *Samsung* decision, that seemed like the more salient issue to address.  Now that *Samsung* provides no such justification, Fitbit appears to be falling back on its mistaken deadlines.

Fitbit also points to a Foley & Lardner blog discussing the *Samsung* decision, yet that blog post simply reiterates how the Federal Circuit rejected Samsung's arguments.  It described no dramatic change to PTAB practice—because there was none.

[12] IPRs have always allowed petitioners to reserve potential indefiniteness of a claim while nonetheless proceeding with prior art arguments. *See Apple Inc. v. Agis Software Development LLC*, IPR2018–00818, Institution Decision, paper no. 9 at 8-9, 2018 Pat. App. LEXIS 8863 at *11 (the applicable rules "do not require Petitioner to express its subjective belief regarding the correctness of its proposed claim constructions"); *Western Digital Corp. v. Spex Technologies*, IPR 2018-00084, Institution Decision, paper no. 14 at 10-12, 2018 Pat. App. LEXIS 5866 at *15-17 (endorsing use of patent owners construction for purposes of IPR).  The *Samsung* case

insists that indefiniteness be briefed separately from claim construction, which still unnecessarily complicates and multiplies the proceedings.

Rather than assess the meaning of the patent claims in light of the specification, what one of ordinary skill in the art would understand, and other relevant extrinsic evidence in one comprehensive set of briefs that address claim construction and indefiniteness, Fitbit insists that the alleged indefiniteness of a single term in the '007 Patent should be briefed separately. Fitbit has also suggested that it has ***additional*** indefiniteness arguments that it apparently intends to introduce. Philips sees no benefit to the parties nor the Court in addressing serial (and potentially endless) motions for partial summary judgment on purportedly discrete indefiniteness issues. The prudent approach would be to deal with indefiniteness in concert with claim construction, as other courts have recognized. *See Audio MPEG, Inc. v. HP Inc.*, 2016 WL 7010947 at *7-8 (E.D. Va. 2016) (finding the "more prudent approach" is to address indefiniteness either during or after a Markman hearing); *ASM Am., Inc. v. Genus, Inc.*, No. C-01-2190-EDL, 2002 WL 1892200 at *15-16 (N.D. Cal. 2002) (discussing how "indefiniteness is intertwined with claim construction"); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F.Supp.3d

---

referenced by Fitbit at the scheduling conference merely re-affirmed what has always been true under the Patent Statute, namely that IPRs only address 102 and 103. See 35 U.S.C. § 311 (IPRs are available "only on a ground that could be raised under section 102 or 103"). As the *Samsung* decision itself acknowledges, it has always been the practice of the PTAB that it will not invalidate claims for indefiniteness. *See Samsung v. Prisua*, 948 F.3d 1342, 1350 (Fed. Cir. 2020) ("On appeal, Samsung challenges the Board's decision not to cancel the claims it found indefinite") Contrary to Fitbit's suggestion, *Samsung* actually endorsed the ability of a petitioner to argue indefiniteness in District Court while nonetheless pursuing an IPR petition—which is exactly what Fitbit alleged *Samsung* somehow precluded. In *Samsung*, the court remanded to the PTAB claims that, despite their indefiniteness, may still be analyzed for invalidity in view of the prior art. *See Samsung*, 948 F.3d at 1355 (remanding the question of invalidity due to prior art of otherwise indefinite claims back to the PTAB).

4845-2843-1033.6

364, 376 (S.D.N.Y. 2016) (noting how "a court's determination of the structure that corresponds to a particular means-plus-function limitation is indeed a matter of claim construction") (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999)).  Indeed, even when claim construction addresses indefiniteness issues, courts in this district have gone so far as to defer ruling on indefiniteness issues until well ***after*** claim construction and until a more complete record is developed.  *Koninklijke Philips Electronics N.V. v. Zoll Med. Corp.*, 914 F.Supp.2d 89, 100-101 (D. Mass. 2012) (declining to rule on indefiniteness until the summary judgment phase as it would be a "battle of the experts" that would not be properly decided at the claim construction phase); *Crane Security Techs., Inc. v. Rolling Optics AB*, 166 F.Supp.3d 76, 90-91 (D. Mass. 2016) (disposing of defendant's assertions of indefiniteness that the court found unpersuasive at the claim construction phase, but waiting to rule on the definiteness other terms)

To be clear, Philips is not attempting to "evade" the motion as Fitbit alleges above. Philips is simply attempting to avoid unnecessary duplicative work for both its client and the Court, especially when the Court is trying to balance its schedule.  Under Philips's proposal, Philips will necessarily address all the indefiniteness issues that Fitbit intends to raise during claim construction briefing.  Furthermore, during the meet and confer, Philips explained that it would be willing to agree to a reasonable number of additional pages for claim construction and indefiniteness briefing depending on how many terms Fitbit identified as indefinite. Accordingly, the page limits provide no reasoned basis to reject the most efficient path forward.[13]

---

[13] Fitbit also raises various collateral proceedings on **different patents** that have no bearing on this case, but which nonetheless demonstrate Fitbit's ongoing disregard for Philips's intellectual property rights.  As the parties have previously acknowledged, many of the asserted patents have either expired or are close to expiring, meaning that they either cannot be enforced in an ITC proceeding or would lead to a very limited remedy in an ITC proceeding.  Meanwhile, Philips's

**2.  101 Motion to Dismiss**

    **a.  Fitbit's Position**

Fitbit proposes the Court set an in-person hearing on the Renewed Motion to Dismiss, Dkt. 33 on a date convenient for the Court in mid-May 2020 or as soon as practicable thereafter. The motion is fully briefed and is case dispositive on the legal issue of patentability of all asserted patents. Fitbit believes an in-person presentation will be of greatest assistance to the Court in deciding the Motion to Dismiss.  Surprisingly, Philips opposes setting any hearing date for this case dispositive motion.  Fitbit believes that live argument regarding the patents-in-suit, will further demonstrate that Philips cannot effectively rebut Fitbit's arguments concerning patent ineligible subject matter.  Moreover, Fitbit believes that providing a date certain for hearing on the case dispositive Motion to Dismiss aid both parties in evaluating the respective merits of their overall global litigation positions and have a productive impact on the parties' global settlement discussions.

    **b.  Philips' Position**

The Court may deny Fitbit's Motion to Dismiss without argument, especially in light of the Supreme Court's denial of cert. in regard to *Berkheimer* and *Cellspin*, and the additional supporting Federal Circuit decisions in *Gemalto* and *Aatrix*.  The issues are fully, and extensively, briefed, and as a Motion to Dismiss there are no disputed facts for which argument would be helpful.  Rather, and as Fitbit recently acknowledged during the recent scheduling conference, at the Motion to Dismiss stage, the Court must adopt Philips's proposed

---

foreign patents obviously can not be enforced in this case.  Fitbit's complaint about the amount of litigation between the parties rings hollow in light of the fact that **hours** after including the above complaints in this statement, **Fitbit sued Philips in the Northern District of California**, seeking a declaratory judgment that the patents asserted at the ITC are not infringed.

understanding of the claims and adopt as true the facts as pled.  Dkt. 56 at 29-30.  To the extent

Fitbit requests oral argument to dispute facts as pled or the understanding of the claims, that is

both unnecessary and improper.

      To the extent the Court believes argument to be necessary, Philips defers to scheduling

such a hearing at the Court's convenience.

   **3.**   **<u>Completion of patent-related disclosures contemplated by Local Rule 16.6(d)(1) and (4)</u>**

   **a.**     **Fitbit's Position**

      Fitbit is working diligently to collect and produce all required discovery by April 15,

2020.  Given the volume of accused products, collection is taking longer than initially expected,

particularly as it relates to source code.  Fitbit will have substantial documents available and

prepared for production by April 15, 2020, including source code.  However, the collection of

source code may not be complete, given the scope of the infringement allegations.  There are 21

accused products, three different operating systems for running the Fitbit App (iOS, Android and

Windows) and multiple versions of the source code. Many of the accused products are legacy

devices that were released over 7 years ago and are no longer in production.  Remote access is

not the issue, but rather the volume and difficulty of finding anyone remaining at Fitbit who has

knowledge of the legacy code to facilitate collection.  Thus, Fitbit respectfully asks the Court to

extend the date for compliance with Local Rule 16.6(d)(1) and (4) to May 14, 2020.  Fitbit will

continue to use best efforts to produce responsive materials by the current deadline.

      Philips is now suggesting that it be allowed to remotely review source code.  There is no

need for this.  The existing code review provisions that were approved by Philips only days ago,

and just entered in the Protective Order dated April 2, 2020 are sufficient.

### b.  Philips' Position

During the meet and confer on Fitbit's request for an extension of time to complete its document production under the Local Rules, Philips made clear that it was willing to entertain a reasonable extension regarding documents if Fitbit could identify with specificity what it needed more time to produce.  Fitbit vaguely mentioned source code, but was unable to commit to limiting the extension of time to source code.  Philips requested that Fitbit identify with specificity the categories of documents that it needed more time to produce, and next received the above proposal for a rolling production of materials that should have been produced weeks ago.

While Fitbit has not elaborated as to what, specifically, the issues are with regard to producing source code, to the extent those issues relate to producing source code on a stand-alone review computer at a remote location, Philips suggests that source code production can be accomplished in a manner that allows for remote reviewing while to COVID situation makes in-person review difficult.[14]  Surely Fitbit allows its engineers and software developers to access source code remotely, and similar means can be utilized in this litigation to allow for remote review of software by Philips's experts and attorneys.  Philips is happy to discuss those options

---

[14] Fitbit refers to the protective order entered into in this matter as agreed to only "days ago," but that is not accurate.  While the parties jointly submitted the protective order earlier this week, that is because many weeks ago—before stay-at-home orders were issued across the U.S.—the parties agreed to adopt a protective order that mirrored that in the ITC.  That does not justify maintaining procedures in this case that are unnecessary and which would needlessly hamper discovery given the present situation.  Regardless, consistent with the agreement that a protective order mirror what was agreed to in the ITC the parties have been discussing the potential for remote source code review procedures in the ITC action as well, but have not yet come to any agreement.

with Fitbit, and the parties at the end of the day may need to agree on a remote means for

reviewing source code.

Dated: April 3, 2020

PHILIPS NORTH AMERICA LLC,

By its attorneys,


/s/ Eley O. Thompson
Ruben Rodrigues (BBO 676,573)
Lucas I. Silva (BBO 673,935)
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Suite 2500
Boston, MA 02199-7610
Phone: (617) 342-4000
Fax: (617) 342-4001
rrodrigues@foley.com
lsilva@foley.com

Eley O. Thompson (*pro hac vice*)
FOLEY & LARDNER LLP
321 N. Clark Street
Suite 2800
Chicago, IL 60654-5313
Phone: (312) 832-4359
Fax: (312) 832-4700
ethompson@foley.com

FITBIT, INC.

By Its Attorneys,


/s/ Yar R. Chaikovsky
Yar R. Chaikovsky
yarchaikovsky@paulhastings.com
Dave  Beckwith
davidbeckwith@paulhastings.com
David  Okano
davidokano@paulhastings.com
Radhesh  Devendran
radheshdevendran@paulhastings.com
Berkeley  Fife
berkeleyfife@paulhastings.com

PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:   1(650) 320-1800
Facsimile:    1(650) 320-1900



Jennifer B. Furey (BBO # 634174)
Andrew T. O'Connor (BBO # 664811)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-1776
Facsimile: (617) 574-4112

E-mail: jfurey@goulstonstorrs.com
aoconnor@goulstonstorrs.com

4845-2843-1033.6

## **CERTIFICATE OF SERVICE**

I certify that a true copy of the above document was served on the attorney of record for each party via the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants, and paper copies will be sent to those indicated as nonregistered participants.

Dated:  April 3, 2020                    By:   _/s/ Yar R. Chaikovsky_
                                                  Yar R. Chaikovsky (*Pro Hac Vice*)