# EXHIBIT C

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Roger J. Quy | Serial No.: | 12/692,080 |
| Filed: | January 22, 2010 | Art Unit: | 3762 |
| Examiner: | Catherine M. Voorhees | Confirmation No. | 1077 |
| Docket No.: | 00125/005001 | | |
| Title: | METHOD AND APPARATUS FOR EXERCISE MONITORING COMBINING EXERCISE MONITORING AND VISUAL DATA WITH WIRELESS INTERNET CONNECTIVITY | | |

Via EFS Web
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

> Certificate of Electronic Transmission
> Under 37 C.F.R. §1.8
>
> I hereby certify that this correspondence and any document referenced herein are being electronically filed with the USPTO via EFS-Web on   10/22/12   ,
>
> _____Joanne Ryan_____
> (Printed Name of Person Sending Correspondence)
>
> /Joanne Ryan/
> (Signature)

Dear Sir:

### RESPONSE TO NON-FINAL OFFICE ACTION

This is in response to the non-final Office Action mailed May 22, 2012, having a shortened statutory deadline of August 22, 2012, This paper is filed with a Petition for a Two-Month Extension of Time and is thus timely filed.

Any fees deemed to be due, or credit for any overpayment for this application, should be directed to Deposit Account Number 50-1047 and authorization is hereby given to charge such account.

**Amendments to the Specification** begin on page 2.

**Amendments to the Claims** begin on page 3.

**Remarks** begin on page 10.

1

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

**In The Specification:**

**Please amend paragraph [0001] as follows:**

CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of U.S. Patent Application Ser. No. 11/649,355, filed January 3, 2007, entitled "Method and Apparatus For Health and Disease Management Combining Patient Data Monitoring With Wireless Internet Connectivity," <u>now abandoned,</u> which is a continuation of U.S. Patent Application Ser. No. 11/156,177, filed June 17, 2005, entitled "Method and Apparatus For Health and Disease Management Combining Patient Data Monitoring With Wireless Internet Connectivity," now U.S. Pat. No. 7,156,809, which is a continuation-in-part of U.S. Patent Application Ser. No. 10/773,501, filed Feb. 6, 2004, now U.S. Patent No. 6,976,958, the entirety of each prior application being incorporated by reference herein.

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

**IN THE CLAIMS:**

1. (Currently Amended)  A wireless internet system for monitoring exercise or fitness, connected in wireless communication with a network, comprising:

   a wireless internet device including a camera, a first port and a second port, the first port for receiving an exercise parameter, wherein the exercise parameter is physiological data related to exercise or data related to the amount of exercise performed, and the second port for communicating with an internet server, at least a portion of a communication path being wireless; <u>and</u>

   a <u>non-transitory</u> computer-readable medium within the wireless internet device, the computer-readable medium having instructions stored thereon for performing a method for monitoring exercise, nutrition, or fitness, the method comprising steps of:

   accepting the exercise parameter via the first port;

   accepting visual data captured by the camera; and

   transmitting data corresponding to the accepted exercise parameter and the visual data to the internet server via the second port,

   wherein the transmitting is performed wirelessly along at least a least a portion of a communication path.

2. (Currently Amended)  The system of claim 1 where the wireless transmitting employs a protocol selected from the group <u>comprising</u> ~~consisting of~~: a variety of cellular protocols, a variety of 802.11 protocols, 802.15 protocols, 802.16 protocols, 802.20 protocols, ultrawideband protocols, wireless universal serial bus protocols, VOIP protocols, broadband wireless protocols, or satellite communication protocols.

3. (Original) The system of claim 1, wherein the wireless internet device is a web-enabled mobile phone.

3

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees


4. (Currently Amended) The system of claim 1, wherein the ~~digital~~ camera is integral with the wireless internet device.

5. (Currently Amended) The system of claim 1, wherein the ~~digital~~ camera is connected to the wireless internet device via a wired or wireless connection.

6. (Currently Amended) The system of claim 1, wherein the <u>first port is adapted to receive the</u> exercise parameter ~~is received~~ from a sensor coupled to an exercise monitor, and wherein the exercise monitor is selected from the group<u> comprising</u> ~~consisting of~~: a heart rate monitor, a respiration rate monitor, a blood pressure monitor, an accelerometer, a pedometer, a GPS device, a body weight scale, a body fat gauge, a biofeedback device, a treadmill, a rowing machine, an exercise bicycle, a stepper, other exercise equipment, and combinations thereof.

7. (Currently Amended) The system of claim 1, <u>further comprising</u> ~~wherein the exercise parameter is received from~~ a sensor within the wireless internet device<u>, and wherein the exercise parameter is received from the sensor</u>.

8. (Original) The system of claim 7, wherein the sensor within the wireless internet device is a GPS device or an accelerometer.

9. (Currently Amended) The system of claim 1, <u>wherein the instructions further perform a method of providing a user interface for the wireless internet device,</u> wherein the exercise parameter is a nutrition parameter, and wherein the nutrition parameter is received from <u>the</u> ~~a~~ user interface ~~associated with the wireless internet device~~.

4

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

10. (Currently Amended)  The system of claim 1, wherein the <u>first port is adapted to receive the</u> exercise parameter<u>, the exercise parameter being</u> <s>is</s> a physiological parameter related to exercise, and wherein the physiological parameter is received from a physiological sensor associated with a device selected from the group <u>comprising</u> <s>consisting of</s>: a heart rate monitor, an ECG monitor, a respiration rate monitor, a blood pressure monitor, a temperature monitor, a body weight scale, a body fat gauge, a biofeedback device, a treadmill, a rowing machine, an exercise bicycle, a stepper, other exercise equipment, and combinations thereof.

11. (Currently Amended) The system of claim 10, wherein the <u>first port is adapted to receive the exercise parameter from a</u> physiological sensor <s>is</s> disposed on an exercise machine.

12. (Currently Amended) The system of claim 1, wherein the <s>internet server is</s> <u>instructions are further</u> configured to transmit data corresponding to the exercise parameter, or the visual data, or both, to another wireless internet device <u>through the Internet server</u>, whereby a user of the another wireless internet device may monitor exercise performed by the user of the wireless internet device.

13. (Original) A method of monitoring an exercise parameter using a wireless internet device, the device connected in wireless communication with a network, comprising:
    receiving an exercise parameter via a first connection from an exercise monitor;
    receiving visual data captured by a camera in data communication with the wireless internet device, the visual data corresponding to an exercise condition, a nutrition condition, or a fitness condition; and
    transmitting data corresponding to the exercise parameter and the visual data to an internet server via a second connection that is at least in part wireless.

5

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

14. (Currently Amended) The method of claim 13 wherein the second connection employs a protocol selected from the group comprising ~~consisting of~~: a variety of cellular protocols, a variety of 802.11, 802.15, or 802.16, or 802.20 protocols, ultrawideband protocols, wireless universal serial bus protocols, VOIP protocols, broadband wireless protocols, or satellite communication protocols.

15. (Currently Amended) A computer program, residing on a <u>non-transitory</u> computer-readable medium, containing instructions for causing a wireless internet device to perform the method of claim 13.

16. (Currently Amended) A computer program, residing on a <u>non-transitory</u> computer-readable medium, containing instructions for causing a server in signal communication with the internet to:
    provide a device application and user interface to a wireless internet device,
        wherein the device application contains instructions for causing the wireless internet device to receive an exercise parameter from a generic input/output port ;
    receive a signal corresponding to an exercise parameter and a visual image from the wireless internet device, the exercise parameter and visual image corresponding to an exercise condition, a nutrition condition, or a fitness condition;
    calculate a response based at least in part on the received signal; and
    communicate the response to the wireless internet device.

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

17. (Currently Amended) A system for monitoring exercise, comprising:

    a wireless internet device ~~in signal communication with~~ including a digital camera and a port for connection to an exercise monitor, the wireless internet device ~~running~~ including an application stored on a non-transitory computer readable medium, the application functioning to accept inputs from the digital camera and from ~~a~~ the port for connection to an exercise monitor, the wireless internet device further including a communications port including a wireless link to a network; and

    a server application stored on a non-transitory computer readable medium, the server application in communication with ~~connected to~~ a network and in communication with the wireless internet device, the server application for reviewing exercise as indicated by the wireless internet device via the camera and a signal from the port for connection to an exercise monitor.

18. (Original) The system of claim 17, wherein the wireless internet device is a web-enabled mobile phone.

19. (Currently Amended) The system of claim 17, wherein the port for connection to an exercise monitor is adapted to receive signals from a device selected from the group comprising ~~consisting of~~: a heart rate monitor, a respiration rate monitor, a blood pressure monitor, an accelerometer, a pedometer, a GPS device, a body weight scale, a body fat gauge, a biofeedback device, a treadmill, a rowing machine, an exercise bicycle, a stepper, other exercise equipment, and combinations thereof.

20. (Currently Amended) The system of claim 17, wherein the port for connection to an exercise monitor is configured to provide a wired connection ~~between the wireless internet device and the exercise monitor is wired~~.

7

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

21. (Currently Amended) The system of claim 17, wherein the <u>port for connection to an exercise monitor is configured to provide a wireless</u> connection ~~between the wireless internet device and the exercise monitor is wireless~~.

22. (Currently Amended) The system of claim 21, wherein the <u>port for connection to an exercise monitor is configured to provide a</u> wireless connection <u>that employs a protocol selected from</u> ~~is via~~ a variety of 802.11, 802.15, or 802.16 protocols or other short range wireless transmission methods.

23. (Currently Amended) The system of claim 17, wherein the <u>communication support including a</u> wireless link to a network is <u>configured to provide a wireless link that employs a protocol selected from</u> ~~via~~ a variety of 802.11, 802.16, or 802.20 protocols, cellular, other broadband wireless protocols, or satellite communication protocols.

24. (Original) The system of claim 17, wherein the server application is further configured to transmit exercise data to another wireless internet device, whereby a user of the another wireless internet device may monitor exercise performed by the user of the wireless internet device.

8

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

25. (Currently Amended)   A system for monitoring exercise, comprising:

    a wireless internet device <u>adapted to be</u> in signal communication with a digital camera, the wireless internet device ~~running~~ <u>including a communications port and</u> an application<u>, the application stored on a non-transitory computer readable medium</u>, the application functioning to accept inputs from the digital camera and from ~~a~~ <u>the</u> communications port, the communications port including a wireless link to a network, the wireless internet device further <u>adapted to be</u> coupled to an exercise monitor; and

  a server application <u>stored on a non-transitory computer readable medium, the server application in communication with</u> ~~connected to~~ a network and in communication with the wireless internet device, the server application for reviewing exercise as indicated by the wireless internet device via the camera and a signal from the exercise monitor.

9

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

**Status of Claims**

      Claims 1-25 are pending in the application and are rejected. Claims 1, 2, 4-7, 9-12, 14 – 17, 19 – 23, and 25 are amended here, and no claims are canceled. The amendments to the claims are primarily formal in nature and find full support in the originally filed application. Claims 1, 13, 16, 17, and 25 remain in independent form.

**Information Disclosure Statement**

      Regarding the Information Disclosure Statement filed with the initial filing, the Examiner crossed out all of the WO references. Applicant contacted the Examiner and pointed out that our transmittal indicated that copies of the WO references could be found in the parent applications. The Examiner stated that she will consider the WO references without requiring the Applicant to refile the IDS.

**Objections**

      The drawings are objected to for including reference characters not mentioned in the description. Amended drawings are included here.

      The specification is objected to for not including updated information on application numbers listed in the disclosure. Upon review Applicant submits only a notation of "now abandoned" was missing, and an amendment to that effect is included here.

      Claim 1 is objected to for informalities. These informalities have been obviated by amendment.

**Rejections Under 35 U.S.C. § 112, second paragraph**

      Claims 1-12 and 17-25 are rejected under 35 U.S.C. 112, second paragraph, as being allegedly indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention. These rejections have been addressed as follows.

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

With respect to the term "internet server" in claim 1, Applicant submits the same was introduced in line 7 with the term "for", e.g., "the second port <u>for</u> communicating with an internet server". With respect to the use of the same term in claim 12, the rejection has been overcome by amendment.

With respect to the term "communication path" in claim 1, Applicant submits the term is used in a clause that makes more specific the same clause noted above, i.e., "the second port for communicating with an Internet server". Thus, the "for" used in the noted clause further modifies the term "communication path" and thus serves as a functional limitation on the second port.

The rejections of claims 2, 4-11, 14, 17, 19, 22-23, and 25 have been overcome by amendment. Consequently, the rejections of claims 3, 18, and 24 have also been overcome.

**Rejections Under 35 U.S.C. § 101**

Claim 16 is rejected under 35 U.S.C. 101 because the claimed invention is allegedly directed to non-statutory subject matter. This rejection has been overcome by amendment.

**Rejections Under 35 U.S.C. § 103(a)**

Claims 1, 3-6, 10-13, 15-21 and 24-25 are rejected under 35 U.S.C. 103(a) as being allegedly unpatentable over David et al. (US 5,441,047, "David") in view of Surwit et al. (US 7,739,130, "Surwit").

Claims 2, 14 and 21-22 are rejected under 35 U.S.C. 103(a) as being allegedly unpatentable over David in view of Surwit as applied to claims 2, 13, 17, and 21, and further in view of Mault et al. (US 6,790,178, "Mault")

These rejections are traversed with respect to the amended claims as follows.

As an initial matter, Applicant notes that, to support an obviousness rejection, MPEP 2143.03 requires "all words of a claim to be considered" and MPEP 2141.02

11

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

requires consideration of the "[claimed] invention and prior art as a whole." Further, the Board Of Patent Appeals and Interferences recently confirmed that a proper, post –KSR obviousness determination still requires the Office making "a searching comparison of the claimed invention - including all its limitations - with the teaching of the prior art." In re Wada and Murphy, Appeal 2007-3733, citing In re Ochiai, 71 F.3d 1565, 1572 (Fed. Cir. 1995) and CFMT v. Yieldup Intern. Corp., 349 F.3d 1333, 1342 (Fed. Cir. 2003). In sum, it remains well-settled law that an obviousness rejection requires at least a suggestion of all of the claim elements.

    Starting with the primary reference David, Applicant notes that the reference relates to a system for patient health monitoring. In the portion of the reference cited by the Examiner, a patient's gait is diagnosed [16:3-56]. Gait is observed to indicate abnormality and the patient's predisposition to falling [4:56-65, 6:24-34, 15:47 – 16:39]. However, independent claim 1 specifically requires receiving <u>physiological data related to exercise</u> or <u>data related to the amount of exercise performed</u>. Independent claim 13 requires <u>receiving an exercise parameter from an exercise monitor</u>. Independent claim 16 requires a device application that causes the reception of an <u>exercise parameter</u> corresponding to an exercise condition, nutrition condition, or fitness condition. Independent claim 17 requires a port for connection to an exercise monitor such that exercise can be reviewed by a server application. Independent claim 25 requires a wireless internet device adapted to be coupled to an exercise monitor, again such that exercise can be reviewed by a server application.

    The David reference bears no relation to monitoring exercise, fitness, nor nutrition. And such makes sense given the purpose of the reference, which is to monitor a patient rather than to monitor exercise. Thus exercise is not disclosed nor more specific steps of receiving data relating to an amount of exercise, much less of review of such data by a server application. In fact David does not disclose any exercise monitor at all for determining physiological data related to exercise or data relating to an amount of exercise performed, instead disclosing various medical monitors for monitoring patient

12

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

vital signs, especially for the homebound. The camera disclosed is for observing primarily the gait of patients, the same being for medical diagnosis purposes and far from an exercise monitor. This is particularly true as there appears no facility for measuring even the number of gait-related movements of a patient over a period of time, the same being a most basic function of an exercise monitor. Moreover, its use with the display of the monitor screen [15:32-37] cannot logically be equated to both the digital camera for visual data and the exercise monitor. Surwit provides nothing in this regard, being related to networking for patient compliance, and for at least this reason, Applicant submits the rejections of the independent claims should be withdrawn.

      In addition, the references lack teaching or disclosure of a wireless internet device as the same has been defined by the claims and the disclosure. The Examiner refers to remote sites 10A, 10B, or the remote site shown in Fig. 6 of David, as wireless internet devices. Applicant respectfully submits that such reference is overbroad. In particular, David discloses that the transmission to the central station may be made by satellite, radio transmission, telephone lines, or cable TV [5:37-42], but the reference does not disclose a cellular phone, but only refers to "a combination with the _bulk_ of a cellular phone".

      Previous applications by the same Applicant have dealt with this issue in various ways as well. As per the MPEP, the state-of-the-art is determined at the time of filing of the application, including its priority date. At the time of priority of the application, it was far from clear that modern technology was leading in this direction. Certainly miniaturization would be accomplished, but providing ports for receiving exercise parameters, as required in some way by each of the independent claims, was not in any way a foregone conclusion or even suggested in the fashion claimed. Moreover, using such ports to monitor data about exercise or fitness, and the use of integrated cameras, particularly the incorporation of such into a conventional cell phone, was also not obvious at the time, because of the limited processing power, memory, and display size of cell phones at that time. In any event it clearly would not have been obvious to add all of these capabilities to the device of David to monitor exercise since the reference itself

13

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

says nothing about fitness or exercise. For this reason, Applicant respectfully submits the development of cell phone technology was far less predictable than the Examiner posits. Thus, for at least this reason as well, Applicant submits the rejections of the independent claims should be withdrawn.

Even more, the combination of references fails to disclose a non-transitory computer readable medium disposed within the wireless internet device, as required by the independent claims (in independent claim 13, the references fail to disclose the processing steps performed by the wireless internet device). For example, in the David reference, the home unit only includes the sensor part of the measuring device. Raw data is sent to a central station which performs the display [8:4-12]. No disclosure is made of processing at the unit. Thus, for at least this reason as well, Applicant submits the rejections of the independent claims should be withdrawn.

Moreover, and with particular regard to independent claim 16, the combination of references fails to teach or disclose providing a device application and user interface to a wireless internet device which causes the wireless internet device to receive an exercise parameter from a generic input/output port. Even if the central station software of David is equated to the server application, the same does not provide instructions, a device application, nor a user interface for the wireless Internet device. Thus, for at least this reason as well, Applicant submits the rejection of the independent claim 16 should be withdrawn.

As an additional reason for patentability, Applicants respectfully submit that the Examiner has not provided sufficient reason why one of ordinary skill in the art would combine the references. In particular, according to KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398 (2007) "rejections on obviousness grounds cannot be sustained by mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." KSR, citing In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006). Moreover, MPEP 2143.01 entitled "Suggestion or Motivation to Modify the References" states:

14

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

"A statement that modifications of the prior art to meet the claimed invention would have been 'well within the ordinary skill of the art at the time the claimed invention was made'" because the references relied upon teach that all aspects of the claimed invention were individually known in the art is not sufficient to establish a prima facie case of obviousness without some objective reason to combine the teachings of the references. Ex parte Levengood, 28 USPQ2d 1300 (Bd. Pat. App. & Inter. 1993).'"

In other words, explicit and articulated reasoning is required, not just conclusory statements. In the present case, the reason given is that "One of ordinary skill in the art at the time of the invention would have recognized the benefits of using a communications network such as the Internet between a patient monitor attached to a server and the remote health care providers in view of the teachings of Surwit." Page 9 of Office Action of May 22, 2012.

Applicant concurs that Surwit teaches a networked system for analyzing patient compliance with medications and therapies, but disagrees that one of ordinary skill in the art would be led to combine Surwit with David. The point of the David reference is networking so that a healthcare worker need not be physically on site. The David reference itself points to no deficiencies in this regard. Thus, it is unclear why one of ordinary skill in the art, with the David reference at hand, would look to Surwit for what would essentially be a redundant system. In this regard it is noted that the "wireless" aspects of the disclosures are essentially the same in each reference.

Thus, for at least all of these reasons as well, Applicant submits the rejection of the claims based on the combination of David and Surwit is insufficient to set forth a proper *prima facie* rejection and thus the rejections should be withdrawn.

Applicant submits that the dependent claims are in allowable condition for even additional reasons.

For example, with respect to dependent claims 3 and 18, the combination of references fails to teach or disclose a Web-enabled mobile phone. With respect to dependent claims 6, 10, 11, and 19-22, the combination of references fails to teach or

15

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

disclose a system including a wireless internet device that has a port adapted to receive an exercise parameter from a sensor, e.g., one that measures physiological parameters related to exercise or that is designed to measure an amount of exercise performed, e.g., one on a treadmill or the like. With respect to dependent claim 7, the combination fails to teach or disclose a sensor within the wireless internet device. In this regard it is noted that the additional reference Teller is employed for the teaching of an accelerometer, but the accelerometer detects body movement or motion to calculate sleep parameters, not an amount of exercise performed as claimed. With respect to dependent claim 9, no provision of a user interface is disclosed. With respect to this claim, Teller is again suggested for the teaching of an input of a nutrition parameter. However, Teller does not teach that the nutrition parameter is received from a user interface on the wireless internet device, as claimed. In contrast, the reference teaches that the same are entered in the form of text to a website, or by response to e-mails, or by a programmed telephone call [8:41-9:13]. With respect to dependent claims 12 and 24, as noted the central station cannot be read as a wireless internet device and thus cannot be read as an "another" wireless internet device as claimed.

With regard to the rejections of claims 2, 14, and 21-22 as unpatentable over David in view of Surwit and further in view of Mault, Applicant notes that Mault teaches wireless protocols to substitute physical docking of the PDA with the monitor module [5:34-49], as opposed to the claimed connection from the wireless internet device to the server. Applicant concurs that the reference notes wireless communications, but does not suggest any of the claimed protocols.

For at least these reasons as well, Applicant submits the rejections of the dependent claims should be withdrawn.

16

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

**Nonstatutory Double Patenting Rejections**

Claims 1-25 are rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-17 of US Patent No. 6,976,958 in view of US Patent Publication No. 2003/0065257 to Mault et al.

Claims 1-7 and 10-25 are rejected on the ground of nonstatutory obviousness-type double-patenting as being unpatentable over claims 1-47 of US Patent No. 7,156,809.

Applicant traverses these rejections as the claims noted in '958 and '809 only relate to disease states or conditions of a patient. They do not relate to exercise parameters, much less to specific exercise monitors and machine such as treadmills. The Mault reference adds little in this regard. In particular, the Mault reference cited relates to a device that combines activity monitoring and diet monitoring. The camera that is employed in Mault is solely related to imaging food for this diet monitoring, not for any sort of exercise monitoring.

In contrast, the current invention relates to physiological and exercise monitoring, and in particular receiving exercise data from an exercise monitor and receiving visual data from the camera corresponding to an exercise or fitness condition. Applicant respectfully submits that the requirement that both visual data and physiological or exercise data are employed is a patentable feature as the same have not been disclosed or suggested before in combination, as required by the MPEP sections cited above. Applicant further notes that the field of exercise is particularly well-suited to additional analysis using visual data. For example, an exercise machine or running track may be imaged to record information about its condition or gradient, weather conditions may be recorded, or the like.

17

12/692,080
Group Art Unit 3762
Examiner Catherine M. Voorhees

## CONCLUSION

      Applicant respectfully submits that all pending claims are in condition for allowance, early notification of which is earnestly solicited. Should the Examiner be of the view that an interview would expedite prosecution of the application, request is made that the Examiner telephone the undersigned attorney at (619) 818-4615 in order to resolve any outstanding issues.


Dated: October 22, 2012                    Respectfully submitted,


                                                          /Mark Wieczorek/

Attorney for Applicant                    Mark D. Wieczorek
Mayer & Williams PC                     Registration No. 37,966
251 North Avenue West, 2nd Floor
Westfield, NJ 07090
Tel.: 619-818-4615
Fax: 908-518-7795

18