# EXHIBIT J



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/211,033 | 09/15/2008 | Roger J. Quy | 00125/002005 | 7693 |

27774         7590         12/29/2009
MAYER & WILLIAMS PC
251 NORTH AVENUE WEST
2ND FLOOR
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| ASTORINO, MICHAEL C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3769 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/29/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

|  | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 12/211,033 | QUY, ROGER J. |
|  | Examiner | Art Unit |
|  | Michael C. Astorino | 3769 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *8/4/09*.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-18* is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) *1-18* is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date *8/4/09 & 5/11/09*.
4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 12/211,033                                                                                                              Page 2
Art Unit: 3769

## DETAILED ACTION

The Examiner acknowledges the response filed August 4, 2009, wherein claims 1-18 are pending. For the record claims 14 and 15 are claims with a separate statutory class from method claims 1 and 8. The fact that claims 14 and 15 refer back, or reference claim 1 does not make claims 14 and 15 dependent claims. As such there are four independent claims and fourteen dependent claims pending in this application.

### *Information Disclosure Statement*

The information disclosure statement filed August 4, 2009 complies with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609. It has been placed in the application file, the examiner's initials have been provided for each citation, the document has been signed and dated, and the information referred to therein has been considered as to the merits.

The information disclosure statement filed May 11, 2009 fails to comply with 37 CFR 1.98(a)(2), which requires a legible copy of each cited foreign patent document; each non-patent literature publication or that portion which caused it to be listed; and all other information or that portion which caused it to be listed. It has been placed in the application file, but the information referred to therein has not been considered.

### *Claim Rejections - 35 USC § 101*

35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Application/Control Number: 12/211,033 Page 3
Art Unit: 3769

Claims 8-15 are rejected under 35 U.S.C. 101 because the claims recite a computer readable medium. The phrase "computer readable medium" was never explicitly defined in the specification.

Computer readable medium includes many possibilities including volatile and nonvolatile media, removable and non-removable media, which further could include RAM, ROM, EEPROM, flash memory or other memory technology, CD-ROM, digital versatile disks (DVD) or other optical storage, magnetic based storage or any other medium which can be used to store desired information and computer readable instructions, data structures, program modules or other data in a modulated data signal such as a *carrier wave* or other transport mechanism and includes any information delivery media. The term "modulated data signal" means a signal that has one or more of its characteristics set of changed in such a manner as to encode information in the signal. By way of example, and not limitation, communication media includes wired media such as wired network or direct-wired connection, and wireless media such as acoustic, RF, infrared and other wireless media. Evidence of the examiner's position regarding the broadest reasonable interpretation of the phrase machine readable medium is provided in Mitchell et al. US 2005/0235345 paragraphs [0020] and [0021].

A computer readable medium including a carrier wave is abstract idea having no practical application and as such is non-eligible subject matter.

Application/Control Number: 12/211,033 Page 4
Art Unit: 3769

## *Claim Objections*

Claim 15 is objected to because of the following informalities: in line 1 there is an extra space between "medium" and the comma. The examiner suggestion removing the extra character space from the claim to read, e.g. "medium,". Appropriate correction is required.

## *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

**Claims 1-18 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.**

In regards to claims 1 and 8, the examiner cannot discern based on the specification the distinction between "physiological data" and "data indicating an amount of exercise performed" because the data overlaps, and as such the examiner cannot discern if two types of data is required or one type of data is required. For example, calories-burned while exercising is physiological data and data indicating an amount of exercise performed. As such one type of data, "calories-burned" would cover two categories "physiological data" and "data indicating an amount of exercise performed".

Applicant states, "[p]hysiological information is clear from the specification at, e.g., paragraph [0018] as describing devices that 'monitor the physiologic status of a healthy subject' and data indicating an amount of exercise performed is described in the specification at, e.g., paragraph [0044]." "Physiological information" is assumed to be synonymous with

Application/Control Number: 12/211,033 Page 5
Art Unit: 3769

physiological data. More importantly it is incorrect to suggest that physiological data or information comes from a device. Physiological information can be received from person, a person can measure there heart rate with there fingers lightly pressed against the carotid artery and a clock. The only device is the clock, but a clock is not sufficient by itself to measure heart rate such that it is physiological information or data. However, it is acceptable to assert physiological information is a "physiologic status of a healthy subject". For example, calories expended while exercising is a type of physiological status/measurement of a healthy subject, but calories expended is also an amount of exercise performed.

Applicant relies on paragraph [0044] to support an argument of definiteness. However, paragraph [0044] merely states that "[0044] In a healthy lifestyle management embodiment, an HMD may be an exercise machine, including treadmills, rowers, steppers, exercise cycles, or other aerobic or anaerobic exercisers, or a monitor, include monitors for temperature, heart rate, blood pressure, *amount of work or rate of work performed*, etc." (emphasis added). The Applicant's assertion that this paragraph clears an otherwise murky issue is incredulous because it merely re-states the claimed limitation.

In conclusion the limitation directed to receiving "physiological data" and "data indicating an amount of exercise performed" is indefinite. The limitation appears to overlap in scope and as such the examiner cannot discern if two types of data are required or one type of data is required under the broadest reasonable interpretation of the claimed invention.

Additionally, claims 14-15 which refer back to claims 1 and 8, and dependent claims 2-7, and 9-13 are rejected because they are refer back to or depend on a rejected claim.

Application/Control Number: 12/211,033　　　　　　　　　　　　　　　　　　　　　　　　Page 6
Art Unit: 3769

Claim 17 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention. In claim 17, the applicant uses trademark, "Bluetooth®" in the claim. See below, MPEP § 2173.05(u). "…A trademark or trade name does not identify or describe the goods associated with the trademark or trade name…". The examiner suggests removing "Bluetooth®", amending the claim to state "short-range wireless transmission"[1]. For examination purposes claim 17 will be examined as if it stated "short-range wireless transmission".

**2173.05(u)　　Trademarks or Trade Names in a Claim**

The presence of a trademark or trade name in a claim is not, per se, improper under 35 U.S.C. 112, second paragraph, but the claim should be carefully analyzed to determine how the mark or name is used in the claim. It is important to recognize that a trademark or trade name is used to identify a source of goods, and not the goods themselves. Thus a trademark or trade name does not identify or describe the goods associated with the trademark or trade name. See definitions of trademark and trade name in  MPEP § 608.01(v). A list of some trademarks is found in Appendix I. If the trademark or trade name is used in a claim as a limitation to identify or describe a particular material or product, the claim does not comply with the requirements of the 35 U.S.C. 112, second paragraph. Ex parte Simpson, 218 USPQ 1020 (Bd. App. 1982). The claim scope is uncertain since the trademark or trade name cannot be used properly to identify any particular material or product. In fact, the value of a trademark would be lost to the extent that it became descriptive of a product, rather than used as an identification of a source or origin of a product. Thus, the use of a trademark or trade name in a claim to identify or describe a material or product would not only render a claim indefinite, but would also constitute an improper use of the trademark or trade name. If a trademark or trade name appears in a claim and is not intended as a limitation in the claim, the question of why it is in the claim should be addressed. Does its presence in the claim cause confusion as to the scope of the claim? If so, the claim should be rejected under 35 U.S.C. 112, second paragraph.

*Note to Applicant Regarding Claim Interpretation*

Each of the following items are directed to descriptive material that is nonfunctional descriptive material because the broadest reasonable interpretation is that the claims are merely

---

[1] Using Short-range wireless transmission is a suggestion that if the Applicant decides to use should be reviewed for

Application/Control Number: 12/211,033 Page 7
Art Unit: 3769

instructions that are not given patentable weight. *See MPEP 2106.01.* In regards to claims 8-15 "computer readable medium" because the computer readable medium can be a carrier wave with instructions which does not have a structural component.

## *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.

**Claims 1-18 are rejected under 35 U.S.C. 102(b) as being anticipated by Brown US Patent Number 5,997,476.**

Brown teaches the use of a remote apparatus (26/28) with a communication network (24, Internet) workstation (20) to remotely monitor a patient/user, (figure 1). The remote apparatus is disclosed as being on a cellular/wireless network, i.e. a cellular/wireless phone (column 4, lines 36-63). The remote apparatus includes many different types of monitoring devices including weight scales and heart rate/pulse rate (column 5, lines 3-6) with an RS-232 connection (column 6, lines 44-46). Brown's remote apparatus further includes a keyboard/buttons to input data regarding how people feel (see fig. 7).

As stated above in regards to claims 8-15 the phrase "computer readable medium" computer readable medium can be a carrier wave which does not have a structural component

compliance under 35 U.S.C. 112 first paragraph for written description issues, i.e. "new matter."

Application/Control Number: 12/211,033 Page 8
Art Unit: 3769

and as such lacks patentable weight. The remainder of the structural limitations in the claims is anticipated by Brown.

See Response to Arguments section below for further details of the rejection.

## Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and, *In re Thorington,* 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Claims *1-12* are rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over *claims 3-6, and 33-43* of U.S. Patent No. *6,602,191.* Although the conflicting claims are not identical, they are not patentably distinct from each other

Application/Control Number: 12/211,033 Page 9
Art Unit: 3769

because it would have been obvious to one of ordinary skill in the art at the time of the invention to implement the method of the patent in the manner set forth in the instant application since the claims of the instant application are merely different renditions of the patented method and computer readable medium.

The Applicant is invited to explain, to make the record clear, reasons that the double patenting rejection does not apply.

### *Response to Arguments*

Applicant's arguments filed August 4, 2009 have been fully considered but they are not persuasive.

Application/Control Number: 12/211,033                                                                    Page 10
Art Unit: 3769

In regards to rejections under 35 U.S.C. 112, the Examiner disagrees with the Applicant that the amended claims are now in compliance. The Examiner has provided a detailed and updated rejection above on the newly amended claims.

In regards to rejections under 35 U.S.C. 102, the Examiner disagrees with the Applicant that the rejection should be withdrawn. The Examiner has thoroughly reviewed the Applicant response, and paraphrased and responded to the major arguments presented by the Applicant below:

**1. Brown notably fails to disclose any substantial teaching of how to take patient monitoring "into the field", i.e. to make it work wherever the patient is as long as there is a standard wireless connection.**

Examiner Response: Applicant never claimed the use of a wireless connection to perform any step of the method. As such even if the Examiner were to concede the Brown does not teach a wireless connection, which the Examiner does not concede, a wired connection still rejects properly the broadest reasonable interpretation of the claimed invention. The Applicant actually admits such a fact in claim 4 wherein the reception of exercised-related data occurs via a wired connection. Albeit claim 17, includes more specifics regarding the wireless connection, claim 17 is dependent on claim 4. And in rejecting claim 4 the examiner merely has to reject the wired alternative to then also reject claim 17 because the more specific wireless requirements to the wireless alternative do not affect the wired alternative.

**2. Brown lacks the use of a web-enabled wireless phone.**

Application/Control Number: 12/211,033 Page 11
Art Unit: 3769

Examiner Response: the broadest reasonable interpretation of a web-enabled wireless phone is taught by Brown in column 4, lines 35-63.

**3. Brown lacks "data indicating an amount of exercise performed".**

Examiner Response: Brown disclosure is sufficient to reject the broadest reasonable interpretation of using data indicating an amount of exercise performed. A 60 year old user of the Brown device can reaching a maximum heart rate such as 160 bpm would be sufficient to reject the claim because the 60 year old user exercised an amount necessary to raise his heart rate to the maximum level. On a side note the claims never required the use of a bike, or a measurement of distance miles traveled.

### 4. Brown lacks the use of a server calculation.

The specification states in paragraph [0072] that "[t]he term "calculate" is also used generally, and may entail a simple calculation as well as a complex one. A result may, e.g., be the result of a calculation." The broadest reasonable interpretation of the Applicant's definition of a calculation being a result is sufficiently rejected by a new script from the Brown server.

Regarding the double patenting rejection the broadest reasonable interpretation of claims in this application is merely a different rendition of the claims in the patent.

The Applicant is invited to request an interview to discuss suggestions to overcome the applied prior art.

### Conclusion

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Michael C. Astorino whose telephone number is (571)272-4723. The examiner can normally be reached on Monday-Friday, 8:30AM to 3:30PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Henry Johnson can be reached on 571-272-4726. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 12/211,033 Page 13
Art Unit: 3769

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Michael C. Astorino/
Primary Examiner, Art Unit 3769

December 22, 2009