# EXHIBIT L

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 1 of 7

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:           Roger J. Quy

Application No.        12/211,033

Filed:                September 15, 2008

Title:                METHOD AND APPARATUS FOR MONITORING EXERCISE
                      WITH WIRELESS INTERNET CONNECTIVITY

Art Unit:             3769

Examiner:             Shirley Jian

Confirm. No.:         7693

Docket No.:           00125/002005

Via EFS Web
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

<table>
<tr><td>
Certificate of Electronic Transmission<br>
Under 37 C.F.R. §1.8<br><br>
I hereby certify that this correspondence and any document referenced<br>
herein are being electronically filed with the USPTO via EFS-Web on<br>
September 20, 2010<br><br>
<u>Nancy Joyce Simmons</u><br>
(Printed Name of Person Sending Correspondence)<br><br>
<u>/nancy joyce simmons/</u><br>
(Signature)
</td></tr>
</table>

Sir:

## AMENDMENT AND RESPONSE TO FINAL OFFICE ACTION

This is responsive to the Office Action mailed August 13, 2010 in the above matter, in which the rejections of the claims was made final. A response is due November 13, 2010, and thus this Amendment and Response is timely filed.

No fees are believed to be due. Any fees deemed to be due or credit for any overpayment for this application should be directed to Deposit Account Number 50-1047 and authorization is hereby given to charge such account.

Please enter the following remarks:

**Amendments** begin on page 2.

**Remarks/Arguments** begin on page 6.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 2 of 7

IN THE CLAIMS:

1.     (Previously Presented) A method for interactive exercise monitoring, the method comprising the steps of:

a.     coupling a web-enabled wireless phone to a device which provides exercise-related information;

b.     rendering a user interface on the web-enabled wireless phone;

c.     receiving data indicating a physiologic status of a subject;

d.     receiving data indicating an amount of exercise performed by the subject;

e.      wherein at least one of the data indicating a physiologic status of a subject or the data indicating an amount of exercise performed by the subject is received from the device which provides exercise-related information, and wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising;

f.     sending the exercise-related information to an internet server via a wireless network;

g.     receiving a calculated response from the server, the response associated with a calculation performed by the server based on the exercise-related information; and

h.      running an application in the web-enabled wireless phone for receiving the exercise-related information and displaying the response.


2. (Previously Presented) The method of claim 1, wherein the receiving data indicating a physiologic status of a subject includes receiving data from a physiological sensor coupled to an exercise machine.


3.  (Previously Presented) The method of claim 1, where the receiving data indicating an amount of exercise performed by the subject includes receiving data from an exercise machine.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 3 of 7

4.  (Previously Presented)  The method of claim 1, wherein the web-enabled wireless phone receives exercise-related information over a transmission medium, the transmission medium including a wired connection or a wireless connection.


5.  (Canceled)


6.  (Original)  The method of claim 1, wherein the web-enabled wireless phone receives data via an adapter to convert a signal from the device to a suitable input for the wireless phone.


7.  (Previously Presented) The method of claim 1, wherein the data indicating an amount of exercise performed is received from a device selected from the group consisting of: a treadmill, a stepper, an exercise cycle, an accelerometer, a rowing machine, physiotherapy equipment, an aerobic or anaerobic exercise device, and a device that monitors an amount of work or rate of work performed.


8.  (Previously Presented)  A non-transitory computer-readable medium, containing an application for performing an interactive method of exercise monitoring, the application physically residing on a server, the method comprising the steps of:

a.      receiving exercise-related information from a web-enabled wireless phone, wherein the exercise-related information includes data indicating a physiologic status of a subject and data indicating an amount of exercise performed by the subject, and wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising;

b.      calculating a response based on the exercise-related information;

c.      transmitting the calculated response to the web-enabled wireless phone.


9.  (Previously Presented) The medium of claim 8, wherein the method further comprises:

a.  enabling the web-enabled wireless phone to receive exercise-related information from a device; and

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 4 of 7

b.  transmitting to the web-enabled wireless phone a device application including a user interface on which the calculated response may be rendered.

10.  (Previously Presented) The medium of claim 8, wherein the calculating a response includes calculating a response to assist a person in monitoring calorie expenditure, losing weight, or maintaining a healthy lifestyle.

11.  (Previously Presented) The medium of claim 8, wherein the instructions further cause the web-enabled wireless phone to receive the exercise-related information via an adapter, the adapter to convert a received data signal to a suitable input for the web-enabled wireless phone.

12.  (Previously Presented) The medium of claim 8, wherein the data indicating an amount of exercise performed by the subject is received from a device which is selected from the group consisting of: a pedometer, a treadmill, a stepper, an exercise cycle, an accelerometer, a rowing machine, physiotherapy equipment, an aerobic or anaerobic exercise device, and a device that monitors an amount of work or rate of work performed.

13.  (Previously Presented)  The medium of claim 8, wherein the receiving exercise-related information includes receiving exercise-related information over a wireless or a wired connection.

14.  (Previously Presented)  A web-enabled wireless phone, containing a computer-readable medium, the computer-readable medium comprising memory within a web-enabled wireless phone, the computer-readable medium comprising instructions for causing a processor in the web-enabled wireless phone to perform the method of claim 1.

15.  (Previously Presented)  A computer-readable medium, the computer-readable medium comprising memory within a web-enabled wireless phone, the computer-

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 5 of 7

readable medium containing instructions for causing a processor in a web-enabled wireless phone to perform the method of claim 1.

16.  (Previously Presented)  The method of claim 1, further comprising downloading the application to the web-enabled wireless phone from a server.

17.  (Previously Presented)  The method of claim 4, wherein the wireless connection includes an infrared connection or a radio frequency communication protocol including a short-range wireless transmission scheme.

18.  (Previously Presented)  The method of claim 4, wherein the wired connection includes a USB connection, a cable, or a docking station.

19.  (Currently Amended)  The method of claim 17, wherein the short-range wireless transmission scheme includes 802.11 or ~~802.15~~ <u>Bluetooth®</u>.

20.  (Previously Presented) The method of claim 1, wherein the data indicating a physiologic status of a subject is received from a device selected from the group consisting of: a heart rate monitor, a blood pressure monitor, a body temperature monitor, a respiratory monitor, a biofeedback device, an electronic body weight scale, and a body fat gauge.

21. (Previously Presented) The medium of claim 8, wherein the data indicating a physiologic status of a subject is received from a device which is selected from the group consisting of: a heart rate monitor, a blood pressure monitor, a body temperature monitor, a respiratory monitor, a biofeedback device, an electronic body weight scale, and a body fat gauge.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 6 of 7

## **REMARKS**

### Status of the Claims

Claims 1-4 and 6-21 are pending in the application.  Claim 5 has been previously cancelled.   Claims 1, 8, 14, and 15 are the independent claims. Claim 19 has been amended.

### General Remarks

Applicant notes the removal of certain objections and rejections due to Applicant's prior response.  Applicant requests reconsideration of the remaining claims in light of the arguments provided below.

### Finality of Rejections

Applicant notes that the Examiner has made the current Office Action final as follows:

> Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL.**  See MPEP § 706.07(a).
>
> Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

For the record, Applicant has reproduced a portion of this section of the MPEP below:

**706.07(a) Final Rejection, When Proper on Second Action [R-6]**
Due to the change in practice as affecting final rejections, older decisions on questions of prematureness of final rejection or admission of subsequent amendments do not necessarily reflect present practice.
Under present practice, second or any subsequent actions on the merits shall be final, except where the examiner introduces a new ground of rejection <u>that is neither necessitated by applicant's amendment of the claims</u>, nor based on information submitted in an information disclosure statement filed during the period set forth in 37 CFR 1.97(c) with the fee set forth in 37 CFR 1.17(p).

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 7 of 7

In the present case, Applicant submits the finality of the Office Action is premature for at least two reasons. First, Applicant amended the claims in a way suggested by the Examiner as discussed in the telephonic interview held between the Applicant's representative and the prior Examiner (Michael C. Astorino) on March 8, 2010:

> Substance of interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments. *Participants discussed the previous office action including the IDS, 35 U.S.C. § 101, 35 U.S.C. § 112, 35 U.S.C. § 102, and double patenting rejections. The examiner provided suggestions to obviate the rejections and overcome the applied prior art.*

Applicant submits that his attempt to meet the requirements of the Examiner should not be met with a Final Office Action, and that issuance of the same is in clear contravention to the Patent Office policy of compact prosecution. The amendments were of the type suggested by the Examiner in the telephonic interview, and merely clarified in a definitional way the two types of data previously claimed, as well as when such data are monitored. For this reason alone, the finality of the rejections should be withdrawn.

Even assuming, *arguendo*, that the above were not the case, Applicant submits that the rejections ought not be rendered final for other reasons. In particular, Office Actions are improperly final where the Examiner introduces a new ground of rejection that is not necessitated by applicant's amendment of the claims. In the current case, the Examiner introduced a new prior art reference, Root, that was not necessitated by Applicant's amendments of the claims.

For these reasons, Applicants respectfully submit that the finality of the rejections should be withdrawn.

Double Patenting Rejection

Claims 1-12 stand rejected under the judicially created doctrine of obviousness-type double patenting as being allegedly unpatentable over claims 3-6 and 33-43 of U.S. Patent No. 6,602,191. This rejection is traversed with respect to the claims as follows.

Applicant initially notes that he assumes the Examiner is referring to at least the current independent claims 1 and 8 in the current case. The recitation of claims 1-12 is confusing as there is no currently-pending claim 5. However, in the interest of compact

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 8 of 7

prosecution, Applicant will assume the Examiner is at least referring to the above-noted independent claims (and claims 14 and 15 require the limitations of claim 1).

Independent claim 1 requires, among other limitations, receiving data indicating a physiologic status of a subject and receiving data indicating an amount of exercise performed by the subject, wherein at least one of the data indicating a physiologic status of a subject or the data indicating an amount of exercise performed by the subject is received from the device which provides exercise-related information, and wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising.   Independent claim 8 includes similar limitations, although on the server side.

Claims 3-6 and 33-43 of the '191 patent contain no such limitations about two types of data being received, nor that a physiologic status is received at least partially while a subject is exercising.  Nor can the same be an obvious variant.  Because of limitations in processing power, memory, and display capability with mobile phones at the time of the '191 patent, one of ordinary skill in the art would not have expected that two such types of data could be received and transmitted by a mobile phone.  While voice communications were abundant and some data transmission was possible, the transmission of two data types in the way claimed would not have been obvious to one of ordinary skill in the art.

With regard to dependent claims, the same include even more distinguishing limitations.

For at least these reasons, Applicant submits that the double patenting rejections of the claims should be withdrawn.


**Claim Rejection Under 35 U.S.C. 112, first paragraph**

Claim 19 is rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement.  In particular:

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 9 of 7

Claim 19 is rejected under 35 U.S.C. 112, first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. The claim limitation "802.15" is new matter, not supported by the disclosure.

Applicant has amended the claim to recite Bluetooth® instead of 802.15. Support for Bluetooth® is provided in various locations in the specification, including, e.g., [0044], [0052], and [0092].    Bluetooth®, a term well-understood to one skilled in the relevant art, was used in the claims of all previous family patents included by reference. Consequently, the rejection of claim 19 on this basis should be withdrawn.

## Claim Rejections Under 35 U.S.C. 102  - Root

Claims 1-4, 6-18 and 20-21 are rejected under 35 U.S.C. 102(e) as being anticipated by Root et al., U.S. Patent No. 6,013,007 ("Root"). Applicant respectfully traverses this rejection as follows.

Applicant first notes that Root is much like the devices disclosed by the Applicant in the Background section of the current application. See [0007] and [0010]. These generally relate to systems that employ ordinary phone lines, and which lack full back-end server functionality.

Applicant next notes that Root is not a wireless device. Root connects to a PC for downloading via a "standard telephone line" (see Figs. 7-9, 4:54-67, 5:66 – 6:41). The only communications disclosed in Root that have any wireless character at all are as follows: an AM/FM/TV radio which is only disclosed for entertainment purposes (see Fig. 1A and 4:40-48), not for wireless communications; a GPS receiver (see Figs. 2-6 and 4:4-26, 5:36-65, 7:29-50) to determine the position of the GPS antenna 301 and its current speed and direction; and, in one embodiment, an IR port 124 (Fig. 1B, 6, 7 and 6:1-2) allowing data communication between the device 101 and a local PC 701.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 10 of 7

Consequently, and with respect to all the claims, Root is deficient as an anticipatory reference because the same lacks teaching or disclosure of, at least, coupling a web-enabled wireless phone to a device which provides exercise-related information. That is, there is no wireless character nor is there web-enablement. As noted, the "radio" mentioned by the Examiner is AM/FM/TV radio module 607 which cannot send exercise-related information as claimed. The GPS system can only receive data, time signals, allowing geolocation. That is, the wireless GPS network 204 is not pertinent to such communications since the same is only employable to transmit radio signals to device 101 to determine location (7:29-40). The IR port cannot send exercise-related information to an internet server via a wireless network either.

Regarding web-enablement, the only such aspect even potentially inferable is using an external computer via the serial or infrared port or using a remote computer via modem. But this inference would defeat the purpose of having a mobile device. Accordingly, Applicant submits that to equate these with a web-enabled wireless phone is simply not supportable, especially as the clear purpose of the claimed device is to be carried and used while exercising without being limited to the location of a PC or telephone jack [0017]. In fact, Figs. 2-3 of Root show the user exercising with no connections indicated, and Figs. 7-9 show the monitor alone being connected to a PC or to a remote computer for data storage and analysis (4:54-64).

Applicant concurs that Root discloses that an "internet web site" may be employed to present performance data (8:64 – 9:9). But again Root only discloses PC-based browsers, not web-enabled wireless phones, and thus this disclosure deficient as an anticipatory reference against the claims.

Applicant submits that the equating of the claimed web-enabled wireless device with the device 101 in combination with the PC 701/801 same runs afoul of the MPEP 2131, which states that:

> TO ANTICIPATE A CLAIM, THE REFERENCE MUST TEACH
> EVERY ELEMENT OF THE CLAIM
> "A claim is anticipated only if each and every element as set forth
> in the claim is found, either expressly or inherently described, in a single
> prior art reference." Verdegaal Bros. v. Union Oil Co. of California, 814

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 11 of 7

> F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987). "The identical
> invention must be shown in as complete detail as is contained in the ...
> claim." Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1236, 9 USPQ2d
> 1913, 1920 (Fed. Cir. 1989).

In this case, Root fails to teach use of a web-enabled wireless phone or anything like it, and thus Applicants respectfully submit that the novelty rejection based on this reference should be withdrawn.

Even assuming, *arguendo*, Root taught a web-enabled wireless phone, the reference is deficient as an anticipatory reference for even more reasons.

For example, with respect to claims 1, 14, and 15, Root fails to teach or disclose sending exercise-related information to an internet server via a wireless network (in the case of claim 8, receiving such information). Many of the ways in which this limitation is lacking in Root are analogous to the arguments above. In particular, Root discloses two ways of having their device 101 communicate with a PC 701/801. In one way, the reference employs an RJ-11 type telephone port 113 which connects an internal modem 613 via a standard telephone line to a remote computer 801, which is connected to the internet 803 by a modem bank 802 (Fig. 8 and 4:60-63 and 8:58-65). In the other way, the device 101 is connected to a PC 701 directly via a serial-type port 118 or an IR-type port 124 (Fig. 7 and 5:66 - 6:2). The PC 701 is then connected to the internet 803 via a modem 902 and standard telephone lines (Fig. 9 and 6:29-34). Notably, Root discloses other forms of communication too - but even where Root discloses these other forms, none of them are disclosed to be wireless (6:32-34).

Applicant submits that even if the PC were able to connect wirelessly, the reference would still be deficient as anticipatory because the device 101 is incapable of wireless communications to the internet in the absence of a PC (and such communications are clearly not the purpose of the IR port 124). The purpose of the invention would be completely defeated in this case, and thus such a reading would be impermissible.

The Root reference clearly is for storing data about exercise and then uploading the same at a later time via a standard telephone line, which is far different from real-time

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 12 of 7

monitoring of exercise and physiological data and real-time uploading of the same via a web-enabled wireless phone, thus enabling the user to be free from being limited only to the location of a PC or telephone jack. So for this reason as well, Applicant submits the rejections of the independent claims should be withdrawn.

Even assuming, *arguendo*, Root was not deficient on this basis, the reference is deficient as an anticipatory reference for even more reasons.

For example, with respect to claim 1, 14, and 15, Root fails to teach receiving a calculated response from a server (with respect to claim 8, calculating a response and transmitting such a calculated response). Rather, what is termed a calculated response by the Examiner is actually a compiling of multiple users' data for purposes of marketing or the like. Information is sent to an Internet web site (8:64 – 9:9). The same is nowhere disclosed to be received by the web-enabled wireless phone since the Root device is not a proper forum for this information. The promotional or other such information appears to be sent to a user's computer, not the device carried or worn by a user. Applicant concurs that a subject may listen to such promotional items such as audio targeted advertising on the device 101, but only after the same has been downloaded to a computer 701/801 and transferred (9:21-30).

The reference is further deficient because no calculated response could conceivably be received, at least not one associated with a calculation based on the exercise-related information, since exercise-related information is not sent to an internet server during the time of exercise. In other words, data indicating an amount of exercise performed by the subject may be received in Root because of the GPS connection, but the same could not be sent to an internet server and a response received based on the sent data. The same is true of data indicating a physiologic status of a subject. In both cases, the same is only disclosed to be uploaded later via a standard telephone line, and consequently is not disclosed to be used in a calculated response to a web-enabled wireless device.

Even where Root discloses communicating other sorts of information to a subject, the same are not calculated responses from a server, but rather locally-derived information such as pre-set targets input by the subject.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 13 of 7

For all of these reasons as well, Applicant submits the rejections of the independent claims should be withdrawn.

The dependent claims are allowable for even more reasons.  For example, with regard to claims 9 and 16, Root fails to disclose downloading applications to a web-enabled wireless phone from a server.  Root fails to disclose adaptors, as required by claims 6 and 11.  As Root fails to disclose web-enabled wireless phones, the reference is deficient in anticipating claims 14 and 15, which are directed to these.

## Claim Rejection Under 35 U.S.C. 103 - Root

Claim 19 is rejected under 35 U.S.C. 103(a), as being unpatentable over Root as applied to claim 1 above.  Applicant respectfully traverses this rejection.

Claim 19 refers to types of short-range wireless transmission schemes by which the web-enabled wireless phone receives exercise-related information, notably 802.11 or Bluetooth®.  Root receives this information in device 101 in only one way that is wireless: GPS, which is in no way a short-range wireless transmission scheme.  Root receives this information in device 101 in other ways, but they are all wired communications.  It is true that Root discloses an IR port, but the same is for communications between the device 101 and the PC 701/801, not for transmitting data to the device 101.  Since any structure or disclosure necessary to meet the claim limitation is lacking in Root, it cannot be obvious to include a Bluetooth® or 802.11 port as a means of receiving such exercise data, e.g., from physiological sensors or from exercise machines.

Serial No.: 12/211,033
Examiner Shirley Xueying Jian
Group Art Unit 3769
Page 14 of 7


## Conclusion

Should the Examiner be of the view that an interview would expedite
consideration of the application, request is made that the Examiner telephone the
Applicants' attorney at (703) 433-0510 in order that any outstanding issues be resolved.


                                        Respectfully submitted,


Dated: _September 20, 2010              _/Mark Wieczorek/_____
Attorney for Applicant                 Mark D. Wieczorek
Mayer & Williams, PC                   Registration No. 37,966
251 North Avenue West, 2nd Floor
Westfield, NJ 07090
Tel.: 703-433-0510
Fax: 703-433-2362