# Philips v. Fitbit

Case No. 1:19-cv-11586 (D. Mass)

**Hon. Judge Talwani**

**Plaintiff's Claim Construction Presentation**

August 5, 2020





# Overview

- U.S. Patent No. 6,013,**007** (Root)

  – "means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver"

  – "means for suspending and resuming operation of said means for computing when a speed of the athlete falls below a predetermined threshold"

- U.S. Patent No. 7,088,**233** (Menard)

  – "governing information transmitted between the first personal device and the second device"

  – "first personal device"

  – "wireless communication"

- U.S. Patent No. 8,277,**377** (Quy)

  – "indicating a physiologic status of a subject"

2



# U.S. Patent No. 6,013,007 (Root)

3

# '007: Structure – Claim Recites Algorithm



Fig. 6

**1**. A portable feedback system providing regular updates on an athlete's performance, comprising:

    a global positioning system GPS receiver that obtains a series of time-stamped waypoints;

    means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver; and

    means for presenting the athletic performance feedback data to an athlete.

    During the exercise session, the GPS receiver module **604** continuously determines the athlete's geographical position and stores it in the memory **608** along with other information such as the date and time that each position was acquired.

'007: 7:40-43

4



# '007: Structure – Algorithm Stated In Claim

> means for computing athletic performance feedback data
> from the series of time-stamped waypoints obtained by
> said GPS receiver; and

- A patentee may express an algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011).

- "Structure may also be provided by describing the claim limitation's operation, such as its input, output, or connections. The limitation's operation is more than just its function; it is how the function is achieved in the context of the invention." *Apple v. Motorola*, 757 F.3d 1286, 1299 (Fed. Cir. 2014) (overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc)).

- "Because the claim language discloses the algorithm to perform the stated function, the court finds that the [disputed] terms are not subject to analysis under 35 U.S.C. § 112 ¶ 6 and are therefore not indefinite." *Typemock, Ltd. v. Telerik, Inc.*, No. 17-10274-RGS, 2018 WL 4189692 at *8 (D. Mass. Aug. 31,2018); *Gemalto S.A. v. HTC Corp.*, No. 6:10-CV-561 LED-JDL, 0212 WL 2505745 at *23-24 (E.D. Tex. June 28, 2012); *Signal IP v. Am. Honda Motor Co.*, No. LA CV14-02454 JAK (JEMx), 2015 WL 5768344 at *40 (C.D. Cal. Apr. 17, 2015)

5

**PHILIPS**

# '007: Structure – POSITA

- Not meaningfully contested by Fitbit; no expert declaration provided

A person of ordinary skill in the art of the patented inventions is an individual with a.) at least a bachelor's degree in electrical engineering, computer engineering, computer science, or the equivalent thereof, and b.) some experience with activity and/or health monitoring technologies, or the equivalent thereof. For the '007 Patent, a person of ordinary skill in the art would additionally have experience with GPS technologies, while for the '233 Patent a person of ordinary skill in the art would also have experience with security in the context of wireless communications.  This level of ordinary skill is supported by the accompanying declaration of Dr. Thomas L. Martin, PhD, who has much more than the ordinary level of skill in the art pertinent to the patents.  (*See* Ex. 5, Martin Decl. ¶ 11.)

6



# '007: "athletic performance feedback data"

- Dr. Tom Martin, PhD

  – Prof. of Electrical and Computer Engineering at Virginia Tech

  – "[T]he specification and claims also sufficiently discloses an algorithm for computing elapsed distance, current or average speed, or current or average pace from a series of time-stamped GPS waypoints."  (Ex. 5, Martin Decl. ¶ 18)

  – Would be understood by someone with high-school level understanding of math.  (Ex. 5, Martin Decl. ¶ 18)

7



# '007: "athletic performance feedback data"

• Dr. Martin's
Testimony: Algorithm
Disclosed

> Q. So where in the specification of any of the patents-in-suit that you reviewed is there an algorithm for finding the distance between two points?
>
> A. I'm sorry. I just said I don't think you -- you need to specify an algorithm for finding the distance between two points. Saying "find the distance between two points" would be the step that I would provide within an algorithm.
>
> Q. So is there anywhere in the specification where there is an algorithm for finding the distance between two points?
>
> MR. RODRIGUES: Objection to form.
>
> THE WITNESS: You know, as I've described in my report and as what I think I've said in the last couple of questions, just saying "find the distance between these two GPS points" is enough to describe what you need to do.

Martin Dep. 42:5-22

8



# '007: "athletic performance feedback data"

- Dr. Martin's Testimony: Algorithm Disclosed

Q.   Now, why did you feel a need to look outside the specification on the patent in order to demonstrate an algorithm that calculated distance?

MR. RODRIGUES: Objection to form, lacks foundation.

THE WITNESS: Actually, I wasn't trying to show that there was an algorithm; I was just trying to show that just saying find the distance between two points is relatively simple.

BY MR. PETERMAN:

Q.   And -- oh.  Why were you -- why were you trying to establish the point that finding the distance between two points was relatively simple?

A.   Because just saying finding the distance between two points would be the kind of step -- if I was sketching out an algorithm, that might be the kind of step that I would provide in the sketch of the algorithm.

So just saying calculate the -- find the distance between these two points, you find the distance.

Q.   So where in the specification of any of the patents-in-suit that you reviewed is there an algorithm for finding the distance between two points?

A.   I'm sorry.  I just said I don't think you -- you need to specify an algorithm for finding the distance between two points.  Saying "find the distance between two points" would be the step that I would provide within an algorithm.

Martin Dep. 41:9-42:4

9



# '007: "athletic performance feedback data"

- Patent provides sufficient algorithmic disclosure if a POSITA would know to apply a well-known or basic formula to achieve the recited function.

  – *See Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1345 (Fed. Cir. 2016) (finding sufficient disclosure of an algorithm for calculating impedance as a POSITA would know how to apply Ohm's law, even though it was not expressly disclosed in the specification).

- "[T]he patentee need not disclose details of structures well known in the art." *Default Proof Credit Card System, Inc. v. Home Depot USA, Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) (suggesting expert testimony appropriate to shed light on the disclosure)

10



# '007: "athletic performance feedback data"

- The scope of the claimed function **<u>matters</u>**:

> **1**. A portable feedback system providing regular updates on an athlete's performance, comprising:
>     a global positioning system GPS receiver that obtains a
>         series of time-stamped waypoints;
>     <mark>means for computing athletic performance feedback data
>         from the series of time-stamped waypoints obtained by
>         said GPS receiver; and</mark>
>     means for presenting the athletic performance feedback
>         data to an athlete.

- *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir. 1998); *Asyst Tech., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001)

- Claimed function is **<u>not</u>** error correction.

11



# '007: "<u>athletic</u> performance <u>feedback</u> data"

- **<u>Proposed Construction</u>**: "determining any of the following from a series of time-stamped waypoint obtained by said GPS receiver during an exercise session: elapsed distance of an athlete; current or average speed of an athlete; current or average pace of an athlete."

- Does **<u>not</u>** include calories.

A Global Positioning System (GPS) based personal athletic performance monitor for providing an athlete with real-time athletic performance feedback data such as elapsed exercise time, distance covered, average pace, elevation difference, distance to go and/or advice for reaching pre-set targets. The

'007: Abstract

(3) To provide a device which continuously and consistently provides accurate, real-time performance feedback such as elapsed time, elapsed distance, current and average speeds and paces, current climbing rate, and so forth, independent of its outdoor location in the world;

'007: 2:8-12

12



# '007: "<u>athletic</u> performance <u>feedback</u> data"

During the exercise session, the GPS receiver module **604** continuously determines the athlete's geographical position and stores it in the memory **608** along with other information such as the date and time that each position was acquired. From these positions and times, performance data such as elapsed distance, current and average speeds and paces, calories burned, miles remaining, and time remaining are calculated. Based on this data, recommendations to increase or decrease level of effort to meet pre-set performance targets are then determined.

'007: 7:40-50.



# '007: "athletic performance <u>feedback</u> data"

- Does **not** include time remaining and miles remaining unless determined from a series of time stamped waypoints



Fig. 11

means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver; and

14



# '007: "means for suspending and resuming…"

- **<u>Proposed Construction:</u>** "a processor (and equivalents thereof) that suspends said computing when a speed of the athlete is below a predetermined threshold and resumes said computing when a speed of the athlete is not below said predetermined threshold."

> **7**. A portable feedback system as recited in claim **1**, further comprising means for suspending and resuming operation of said means for computing when a speed of the athlete falls below a predetermined threshold.

15



# '007: "means for suspending and resuming…"

A smart algorithm based on measured parameters such as speed, pace, exercise type, heart rate, and so forth can be optionally used to automatically determine if the athlete has temporarily suspended exercising and temporarily pauses monitoring until exercise is resumed. In addition, monitor-   '007: 8:5-10.

• "Smart" algorithm not required for **claimed function**:

7. A portable feedback system as recited in claim **1**, further comprising means for suspending and resuming operation of said means for computing when a speed of the athlete falls below a predetermined threshold.

16



# U.S. Patent No. 7,088,233 (Menard)

17

# '233: "governing information transmitted…"

- **Proposed Construction**: "controlling the transmission of information between the first personal device and the second device."

- Encryption **alone** does not govern information transmitted.
  - While a form of "security," does not involve **control** over the information.

- Notice of Allowance:

> The primary reason for allowance is the inclusion of a wireless communication system having a long range bi-directional wireless communications module, and a security mechanism which governs the transmission of information between a personal device and an entity receiving the information over the network.

Dkt. 73-6 at 165:3-18

18



# '233: "governing information transmitted…"

- Dr. Martin's Testimony:

> A.   And sorry if I wasn't clear, but I thought
>    I said this in response to Mr. Peterman's question.
>       The encryption would keep people from
>    being able to sniff that data that was being
>    transmitted, but encryption by itself wouldn't be
>    able to authenticate that somebody -- as the example
>    in Figure 5 of the bystander, encryption by itself
>    wouldn't be able to control the action that they
>    were -- the dispensing of the medication that was
>    given in the example.
> Q.   Got it.
> A.   So encryption by itself wouldn't provide
>    the authentication to do that.
> Q.   And so encryption by itself wouldn't meet
>    Element (c) of Claim 1; is that correct?
> A.   In that case, no.                          Dkt. 77-1 at 165:3-18

19



# '233: "first personal device"

- **No Construction Necessary / Alternatively:** "a device for private use by a person."

A personal and/or institutional health and wellness communications system, which may be used for a variety of emergency and non-emergency situations using two-way communication devices and a bi-directional communication network. In one application two-way pagers are adapted for use in the system. In one application cellular devices are adapted for use in the system. In one application an assisted living response center is established using various embodiments of the present personal and/or institutional communications system. The system provides multiple levels of prioritization, authentication of person (task, step, process or order), and confirmation via interrogation of person, device, or related monitor. One embodiment provides a method for receiving, evaluating and responding to calls received from a subscriber, patient, related party, or health care provider or health care system.

'233 at Abstract

20



# '233: "first personal device"

- "personal device" not used as "shorthand" in the specification— the specification uses "PMD" for that.

- "personal **<u>medical</u>** device" simply recites an intended use and would not be limiting.

  - *See In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) (language purporting to limit claim to an intended use should be given no weight)



# '233: "wireless communication"

- **<u>Proposed Construction:</u>** "an over-the-air communication (e.g. using radiofrequency (RF), infrared, or optical techniques)"

- **<u>Not covered</u>**: communicating an electrical signal via an electrical conductor

- **<u>Covered</u>**: communicating via radiofrequency with implantable device.

- Fitbit seeks no construction, yet has argued that "wireless" means simply "without wires" and that use of the human body as a conductor would qualify.



# U.S. Patent No. 8,277,377 (Quy)

23

# '377: "indicating a physiological status…"

- **<u>No construction necessary</u>**

- Fitbit seeks to argue that data received while exercising "must be current data." (Dkt. 78 at 20).

- Fitbit:  current = now, no delay

- The claim is clear, the data need only be **<u>partially</u>** received while the subject is exercising.

1. A method for interactive exercise monitoring, the method comprising the steps of:

a. downloading an application to a web-enabled wireless phone directly from a remote server over the internet;

b. coupling the a web-enabled wireless phone to a device which provides exercise-related information;

c. rendering a user interface on the web-enabled wireless phone;

d. using the application, receiving data indicating a physiologic status of a subject;

e. using the application, receiving data indicating an amount of exercise performed by the subject;

f. wherein at least one of the data indicating a physiologic status of a subject or the data indicating an amount of exercise performed by the subject is received from the device which provides exercise-related information, and wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising;

g. sending the exercise-related information to an internet server via a wireless network;

h. receiving a calculated response from the server, the response associated with a calculation performed by the server based on the exercise-related information; and

i. using the application, displaying the response.

24





25