# Philips v. Fitbit

Case No. 1:19-cv-11586 (D. Mass)

**Hon. Judge Talwani**

**Plaintiff's Opposition to Rule 12(b)(6) Motion to Dismiss**

August 20, 2020

innovation you



# U.S. Patent No. 6,013,007 (Root)

# '007: Structure – Claim Recites Algorithm



Fig. 6

**1**. A portable feedback system providing regular updates on an athlete's performance, comprising:

a global positioning system GPS receiver that obtains a series of time-stamped waypoints;

means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver; and

means for presenting the athletic performance feedback data to an athlete.

During the exercise session, the GPS receiver module **604** continuously determines the athlete's geographical position and stores it in the memory **608** along with other information such as the date and time that each position was acquired.

'007: 7:40-43



# '007: Multiple Distinct Asserted Claims

Asserted Claims: 7, 21, 23, 24, 25, 26, 28, 29

Amended Complaint DI 25

> 59. The '007 patent describing the above-described improved athletic performance monitor
> was filed with the U.S. Patent and Trademark Office on March 26, 1998 and issued on January
> 11, 2000. The U.S. Patent Office carefully examined the claims that ultimately issued as the
> '007 patent. Consistent with 35 U.S.C. §282 and the limitations of the claims of the '007 patent,
> a person having ordinary skill in the art would understand that each claim of the '007 patent
> (independent or dependent) relates to a separate invention distinct from other claims as for
> example with dependent claim 23 which is distinct from independent claim 21.

35 USC 282(a): A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid <u>independently of the validity of other claims</u>; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.

4



# '007: Claim comparison example

Asserted Claims: 7, 21, 23, 24, 25, 26, 28, 29

## Claim 23

21. A system for comparing the performance of an athlete with the performance of other athletes, said system comprising:

a global positioning system GPS receiver for obtaining a series of time-stamped waypoints;

means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver;

means for presenting the athletic performance feedback data to an athlete; and

a modem for transmitting the athletic performance feedback data to a remote computer for comparison with athletic performance data of other athletes.

23. A system as recited in claim 21, further comprising a headset and an audio module for presenting the athletic performance feedback data over said headset.

## Claim 7

1. A portable feedback system providing regular updates on an athlete's performance, comprising:

a global positioning system GPS receiver that obtains a series of time-stamped waypoints;

means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver; and

means for presenting the athletic performance feedback data to an athlete.

7. A portable feedback system as recited in claim 1, further comprising means for suspending and resuming operation of said means for computing when a speed of the athlete falls below a predetermined threshold.



# '007: *Alice* Step 1

What is the improvement over the prior art set forth in the claims?

*Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1302 (Fed. Cir. 2018) ("Starting at step one, we must first examine the '844 patent's 'claimed advance' to determine whether the claims are directed to an abstract idea.")

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018)("these claims recite a specific improvement over prior art systems")

*Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1349 (Fed Cir. 2017)("Just as claims directed to a new and useful technique for defining a database that runs on general-purpose computer equipment are patent eligible, *Enfish*, 822 F.3d at 1337-38, so too are claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform")

*Enfish, LLC v. Microsoft Corp.*, 822 F3d 1327, 1362 (Fed. Cir. 2016)(recognizing that improvements in computer-related technology are not abstract and that Alice did not address this because it did not need to based on admissions).



# '007: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 59-69, including 60-63

> 60. The U.S. Patent Office considered the claims of the '007 patent against the background of prior technology to determine if the claims of the '007 patent identified a patentable advance over prior art systems before issuing the patent. Among other things, the U.S. Patent Office

61.
> '007 Patent. The inventors of the '007 solved the problems of the prior art by first utilizing a GPS obtaining a series of time-stamped waypoints as an athlete moved past points while carrying out an athletic activity. Performance feedback data was then computed from the series of the time-stamped waypoints obtained by the GPS receiver, and presented to a user. In some distinct inventions such as identified in claim 23, a headset presented athletic performance data to a user, facilitating real-time feedback to the user based on a series of time-stamped waypoints which, until the patented inventions, was unavailable to potential users of an activity tracking system.

7



# '007: Claims Directed to Advancement in Art

## Amended Complaint DI 25 : ¶¶ 59-69, including 60-63

62. As would be appreciated by a person having ordinary skill in the art, the separate claims of the '007 patent also pertain to communicating activity data to a remote location where activity data from multiple users could be aggregated and compared for the purposes of, for example, having competitions or providing motivation amongst participants. Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '007 patent are not generically directed to collecting and analyzing exercise data, but rather the claims of the '007 would be understood by a person having ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific system for computing athletic performance data from a series of timestamped waypoints, presenting the athletic performance feedback data to a user (in particular, via an audio module and in some embodiments specifically over a headset), and comparing the athletic performance data with athletic performance data of other athletes.

8



# '007: Claims Directed to Advancement in Art

## Amended Complaint DI 25 : ¶¶ 59-69, including 60-63

63. Devices for navigation (as opposed to activity tracking) prior to the inventions claimed in the '007 patent included only a visual display to show current location, destination, and instructions for traveling to a pre-selected location. Such devices were not designed for use by an outdoor athlete, they did not include athletic performance tracking, they were not capable of presenting information to an athlete, and they did not include a means for storing historic exercise session data. Therefore, a person having ordinary skill in the art would understand that the '007 patent and its claims represent concrete and technological improvements to systems for delivering athletic performance feedback to an athlete. These concrete improvements include the determination of athletic performance feedback using time-stamped waypoints obtained by a GPS receiver, and the presentation of athletic performance feedback data to a user (principally, via audio and in some embodiments over a headset), making it possible for the athlete to obtain the benefit of athletic performance feedback data safely and conveniently.



# '007: Pleadings Establish no Abstract Idea

*Berkheimer* and *Aatrix* stand for the unremarkable proposition that whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time **is a question of fact**.

*Berkheimer v. HP Inc.,* 890 F.3d 1369, 1370 (Fed. Cir. 2018)(en banc denial of rehearing)(emphasis supplied); *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306 (Fed. Cir. 2019); *Koninklijke KPN N.V. v. Gemalto MSM GmbH*, 942 F.3d 1143 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018).

Fitbit is unable to both accept the pleadings and all favorable inferences to Philips, and demonstrate ineligibility.

The claims do not include Fitbit's language, and Fitbit's characterizations are no substitute for the claimed inventions.



# '007: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 59-69, including 60-63

Summary

64: Claims do not pre-empt.  Do not relate to implementation of a prior practice on a computer.

65: Improve personal performance devices. Various advancements are identified in the claims.

66. Provides improvements and advancements in electronics.

67: Provides improvements over prior art as meaningful limitations. The claimed advancements did not exist before.

68: Nonconventional arrangement of components.

69: Claimed advancements are rooted in computers.



# U.S. Patent No. 7,088,233 (Menard)

# The Claimed Invention(s) of the '233 Patent

- **Asserted Claims:** <u>1</u>, 7, <u>8</u>, <u>9</u>, 10, 13, 14, 15, 16, 22, <u>24</u>, <u>25</u>, <u>26</u>

**1**. A bi-directional wireless communication system comprising:

    (a) a first personal device, the first personal device further comprising:

        (i) a processor;

        (ii) a memory;

        (iii) a power supply;

        (iv) at least one detector input; and

        (v) a short-range bi-directional wireless communications module;

    (b) a second device communicating with the first device, the second device having a short-range bi-directional wireless communications module compatible with the short-range bi-directional wireless communications module of the first device; and

    (c) a security mechanism governing information transmitted between the first personal device and the second device.

**7**. The system of claim **1**, further comprising a detector connected to the at least one detector input.

**8**. The system of claim **7**, wherein the detector senses body or physiological parameters.

**9**. The system of claim **8**, wherein the body or physiological parameters are selected from the group consisting of temperature, motion, respiration, blood oxygen content, and electroencephalogram.

**24**. The system of claim **1**, wherein the first personal device further comprises a location determination module that determines the geographical location of the first personal device.

**25**. The system of claim **24**, wherein the location determination module further comprises a GPS receiver.

**26**. The system of claim **1**, wherein the bi-directional communications module has a powered-down state and a powered-up state, and further comprising a means for signaling the bi-directional communications module to transition from the powered-down state to the powered-up state.



# The Claimed Invention(s) of the '233 Patent



*FIG. 5*



# '233: "governing information transmitted…"

- Encryption **alone** does not govern information transmitted.

  – While a form of "security," does not involve **control** over the transmission of information.

- Notice of Allowance:

> The primary reason for allowance is the inclusion of a wireless communication system having a long range bi-directional wireless communications module, and a security mechanism which governs the transmission of information between a personal device and an entity receiving the information over the network.

Dkt. 73-6 at 165:3-18

15



# '233 Patent: Not Abstract

85. There were multiple problems faced by the inventor of the '233 patent in establishing an improved personal physiological system that is friendly to a mobile user, that is easy to install, that is inexpensive, and that provides substantial interoperability between wireless technologies, communication network providers and other widely used medical and public systems. For example, devices prior to the inventions claimed in the '233 patent did not provide sufficient protection and governing of personal information transmission for physiological data of individuals over communication systems while permitting access to such information to authorized individuals, such as on other devices and over the internet to remote locations. The inventions of the '233 patent solved the problems of the prior art by establishing a distributed personal health communication system including a security mechanism governing information transmitted between a personal device with at least one detector input receiving personal physiological information and a second device having a bi-directional wireless communications module. In some distinct inventions, the personal device includes a short range bi-directional wireless communications module and at least one detector input which may receive personal health information such as heart function. A second device, which also includes a short range bi-directional wireless communications module, may receive the personal health information depending, not on the underlying communication link, but on a security mechanism governing information transmitted between the personal device and the second device. Until the patented inventions, such personal medical communication systems were unavailable.

16



# '233 Patent: Not Abstract

87. Wireless devices prior to the inventions claim in the '233 patent only included the Bluetooth standard of the time for wireless transport of data at 2.4 GHz between cellular phones, notebook PCs, and other handheld or portable electronic gear.  *See* col. 4, *ll*. 45-65; col. 13, *ll*. 40-55.  Such devices were not designed to be included in personal medical communication systems, they did not include as provided in claim 9 a detector that senses body or physiological parameters such as motion, blood oxygen content, heart function, etc. where the detector is connected to the detector input  and a bi-directional wireless communications module that can connect to a second device.  Such devices also were not designed to be included in systems where a security mechanism governs information transmitted between the personal device and the second device.  Therefore, a person having ordinary skill in the art would understand that the '233 patent and its claims represent concrete and technological  improvements to personal medical communication systems.  These improvements include a distributed system including a detector of personal medical information connected to the input of a personal device having a bi-directional wireless communications module and a security mechanism governing information transmission between the personal device and a second device.  The advancements established an improved system overcoming the problems of prior systems.



# '233 Patent: Not Abstract

- <u>Finjan, Inc. v. Blue Coat Systems, Inc., 879 F.3d 1299, 1303-04 (Fed. Cir. 2018)</u>

  – Use of "security profile" to identify malware not abstract.

- <u>Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1128-29 (Fed. Cir. 2018)</u>
  – Factual dispute as to whether "data file" constituted an inventive concept precluded finding of ineligibility.



# U.S. Patent No. 8,277,377 (Quy)

# '377: Multiple Distinct Asserted Claims

Asserted Claims: 1, 4, 5, <u>6</u>, 9, 12

<u>Amended Complaint DI 25</u>

107. The '377 patent describing the improved apparatus for monitoring exercise with wireless internet connectivity was issued on October 2, 2012 by the U.S. Patent and Trademark Office based on earlier priority applications filed at least as early as December 17, 1999. The U.S. Patent Office carefully examined the claims that ultimately issued as the '377 patent. Consistent with 35 U.S.C. §282 and the limitations of the claims of the '377 patent, a person having ordinary skill in the art would understand that each claim of the '377 patent (independent or dependent) relates to a separate invention distinct from other claims as for example with dependent claim 6, which is distinct from dependent claim 5, which is distinct from dependent claim 4, which is distinct from independent claim 1.

35 USC 282(a): A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid <u>independently of the validity of other claims</u>; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.



# '377: Claim comparison example

## Asserted Claims: 1, 4, 5, 6, 9, 12

### Claim 1

**1**. A method for interactive exercise monitoring, the method comprising the steps of:
  a. downloading an application to a web-enabled wireless phone directly from a remote server over the internet;
  b. coupling the a web-enabled wireless phone to a device which provides exercise-related information;
  c. rendering a user interface on the web-enabled wireless phone;
  d. using the application, receiving data indicating a physiologic status of a subject;
  e. using the application, receiving data indicating an amount of exercise performed by the subject;
  f. wherein at least one of the data indicating a physiologic status of a subject or the data indicating an amount of exercise performed by the subject is received from the device which provides exercise-related information, and wherein the data indicating a physiologic status of a subject is received at least partially while the subject is exercising;
  g. sending the exercise-related information to an internet server via a wireless network;
  h. receiving a calculated response from the server, the response associated with a calculation performed by the server based on the exercise-related information; and
  i. using the application, displaying the response.

### Claim 6

**4**. The method of claim **1**, wherein the web-enabled wireless phone receives exercise-related information over a transmission medium, the transmission medium including a wired connection or a wireless connection.

**5**. The method of claim **4**, wherein the wireless connection includes an infrared connection or a radio frequency communication protocol including a short-range wireless transmission scheme.

**6**. The method of claim **5**, wherein the short-range wireless transmission scheme includes IEEE 802.11 protocol or short-wavelength radio transmission in the ISM band of 2400-2480 MHz.

21



# '377: *Alice* Step 1

What is the improvement over the prior art set forth in the claims?

*Finjan, Inc. v. Blue Coat Systems, Inc.,* 879 F.3d 1299, 1302 (Fed. Cir. 2018) ("Starting at step one, we must first examine the '844 patent's 'claimed advance' to determine whether the claims are directed to an abstract idea.")

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018)("these claims recite a specific improvement over prior art systems")

*Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1349 (Fed Cir. 2017)("Just as claims directed to a new and useful technique for defining a database that runs on general-purpose computer equipment are patent eligible, *Enfish*, 822 F.3d at 1337-38, so too are claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform")

*Enfish, LLC v. Microsoft Corp.*, 822 F3d 1327, 1362 (Fed. Cir. 2016)(recognizing that improvements in computer-related technology are not abstract and that Alice did not address this because it did not need to based on admissions).



# '377: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 107-118, including 108-112

108. The U.S. Patent Office considered the claims of the '377 patent against the background of prior technology to determine if the claims of the '377 patent identified a patentable advance over prior art systems before issuing the patent. Among other things, the U.S. Patent Office

109. The inventions of the '377 patent solved the problems of the prior art by providing an apparatus for monitoring exercise with wireless internet connectivity including among other things downloading an application to a web-enabled wireless phone, using the application to receive data indicating a physiological status of an individual, sending the exercise-related information to an internet server, and receiving a calculated response from the server where the response is associated with a calculation performed by the server based on the exercise-related information.

* * *

short-range wireless transmission scheme. In other distinct inventions, the transmission scheme of the wireless phone includes IEEE 802.11 protocol or short-wavelength radio transmission in the ISM band of 2400-2480 MHz. Until the patented inventions, such apparatuses for monitoring

23



# '377: Claims Directed to Advancement in Art

<u>Amended Complaint DI 25 : ¶¶ 107-118, including 108-112</u>

110. Therefore, a person having ordinary skill in the art would recognize that the inventions claimed in the '377 patent are not generically directed to the idea of collecting and analyzing exercise data, and presenting the data to a user, but rather the claims of the '377 patent would be understood by a person having ordinary skill in the art to recite concrete advancements in the technology pertaining to a specific apparatus for monitoring exercise with wireless internet connectivity that operates by downloading an application to a web-enabled wireless phone, coupling the phone to a device which provides exercise-related information, using the application to receive data indicating a physiologic status and data indicating an amount of exercise performed, sending the exercise related information to an internet server via a wireless link and receiving a calculated response form the server, where the application displays the response, among other things.

24



# '377: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 107-118, including 108-112

111 (file history of 377 patent).

In particular, the relatively small amount of memory and processing capability provided on a wireless phone in the 1990s, as compared to the present time, severely limited the functionality of applications running on the wireless phone, especially in terms of computing capacity, processing power, and user interface. In the current claimed systems, e.g., the application program downloaded from a server is thus designed to suit the constraints of the small display screens of a mobile phone.  An illustration of the display screen of an extant web-enabled wireless phone at the time of the invention is provided in the Appellant's provisional filing, which is included by way of reference.  By providing significant application functionality on the server, less memory and processing capabilities become necessary on the wireless phone; thus freeing memory and processing power for an interactive user interface and for receiving the exercise related data.  The external application running on the internet server and external data storage were other examples of way employed to overcome the computing limitations of a mobile phone.



# '377: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 107-118, including 108-112

112. The inventor solved the problems of the prior art using a system in which a wireless web device runs an application that functions to receive data indicating the physiologic status of a subject and data indicating an amount of exercise performed. The wireless web device communicates wirelessly with a computer server, and the server calculates a response associated with a calculation performed based on exercise related information, and that response is displayed to the user via the application. Therefore, a person having ordinary skill in the art would understand that the distributed system claimed in the '377 patent represents a concrete solution to the problems of the prior art. The claimed improvements allowed for the efficient



# '007: Pleadings Establish no Abstract Idea

*Berkheimer* and *Aatrix* stand for the unremarkable proposition that whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time **is a question of fact**.

*Berkheimer v. HP Inc.,* 890 F.3d 1369, 1370 (Fed. Cir. 2018)(en banc denial of rehearing)(emphasis supplied); *Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306 (Fed. Cir. 2019); *Koninklijke KPN N.V. v. Gemalto MSM GmbH*, 942 F.3d 1143 (Fed. Cir. 2019); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018).

> Fitbit is unable to both accept the pleadings and all favorable inferences to Philips, and demonstrate ineligibility.
>
> The claims do not include Fitbit's language, and Fitbit's characterizations are no substitute for the claimed inventions.



# '377: Claims Directed to Advancement in Art

Amended Complaint DI 25 : ¶¶ 107-118, including 108-112

Summary
114: Specific improvements identified, e.g., "downloading an application from a remote server to a wireless device to improve functionality of health monitoring devices by enabling coupling to monitoring of data indicating the physiologic status of a subject and/or exercise-related information, and allowing for the calculation of responses to that information from the server."
115: Network efficiency, data analysis and sharing improved.
116: Meaningful improvements; not previously understood.
117: Nonconventional arrangement of components.
118 : Inventive concept rooted in computer technology.



