UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FITBIT LLC, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 19-11586-FDS |

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR LEAVE TO
AMEND INFRINGEMENT CONTENTIONS

**SAYLOR, C.J.**

This is an action for patent infringement. Plaintiff Philips North America LLC has sued defendant Fitbit LLC, asserting claims under 35 U.S.C. § 271 for infringement of three patents of which Philips is the owner and assignee. The patents at issue concern technology related to connected-health products, such as wearable fitness trackers.

Philips has filed a motion seeking leave of the Court to serve supplemental infringement contentions to cover four new Fitbit products: the Charge 4, Versa 3, Inspire 2, and Sense. These products were first made available to the public in 2020.

For the following reasons, that motion will be denied.

**I.   Background**

    **A.   Factual Background**

Philips North America LLC is a Delaware limited liability company based in Massachusetts. (Second Am. Compl. ¶ 12). It develops, among other things, connected-health

technologies and related products, such as wearable fitness trackers that monitor and analyze personal health and fitness information. (*Id.* ¶¶ 2, 4-7, 12, 24-25). Its patent portfolio includes more than 60,000 patents. (*Id.* ¶ 8). It licenses its patented technologies to companies in the connected-health field. (*Id.* ¶¶ 6, 8).

Fitbit LLC is a Delaware limited liability company based in Massachusetts. (*Id.* ¶ 13; Mot. to Reflect Name Change). It develops, manufactures, and sells connected-health products. (Second Am. Compl. ¶¶ 13, 29-30).

The second amended complaint alleges that Fitbit infringes three patents owned by Philips: U.S. Patent No. 6,013,007 ("the '007 patent"), U.S. Patent No. 7,088,233 ("the '233 patent"), and U.S. Patent No. 8,277,377 ("the '377 patent").[1] The patents concern technology related to connected-health products, including GPS/audio athletic training, security mechanisms for transmitting personal data, wearable-technology products, and handling interrupted connections. (*Id.* ¶¶ 9, 12, 37).

The patent at issue for the present motion is the '377 patent, which is titled "Method and Apparatus for Monitoring Exercise with Wireless Internet Connectivity." ('377 patent at Title). It concerns the "monitoring of living subjects." (*Id.* col. 1 ll. 35-36). More particularly, it concerns "health-monitoring of persons where measured or input health data is communicated by a wireless device to and from a software application running on an internet-connected server and where the same may be studied and processed by the software application, a health professional, or the subject." (*Id.* col. 1 ll. 36-41).

---

[1] The original complaint alleged that Fitbit infringes a fourth patent: U.S. Patent No. 6,976,958 ("the '958 patent"). Philips has since withdrawn its allegations of infringement of that patent. The Court's claim construction order rendered invalid all asserted claims of the '007 patent. Additionally, the parties stipulated on October 20, 2021, that proceedings related to the '233 patent would be stayed pending any PTAB appeal. Therefore, only the '377 patent is currently at issue.

The patent provides for a "method and apparatus . . . for wireless monitoring of exercise, fitness, or nutrition by connecting a web-enabled wireless phone to a device which provides exercise-related information, including physiological data and data indicating an amount of exercise performed." (*Id.* at Abstract). It further provides that "[a]n application for receiving the exercise-related information and providing a user interface may be downloaded to the web-enabled wireless phone from an internet server" and that "[t]he exercise-related information may be transmitted to an internet server, and the server may calculate and return a response." (*Id.*).

The patent identifies two "complementary" systems that embody the invention. (*Id.* col. 2 l. 64). The first embodiment may be employed "to manage the disease state or condition of a patient" by "employ[ing] a health monitoring device." (*Id.* col. 2 l. 67; *id.* col. 3 ll. 1-2). That device would provide data by a wireless connection "for processing via the internet[,] including a review by a physician or other health care professional if required." (*Id.* col. 3 ll. 4-5). For example, a diabetic could connect a blood-glucose monitor to a wireless web device, download data to a diabetes-management company's server, and receive guidance concerning his next meal. (*Id.* col. 3 ll. 14-20).

The second embodiment enables implementation of a "health or lifestyle management plan" by allowing "[v]arious health parameters, such as those relating to nutrition or exercise, [to] be entered into a health monitoring device" and to be wirelessly communicated to a server. (*Id.* col. 3 ll. 6-11). In this embodiment, the system "may be employed to monitor the physiologic status of a healthy subject while eating, exercising, or performing other activities." (*Id.* col. 3 ll. 34-36). For example, an individual following an exercise program could attach a wireless web device to an exercise machine, send data from that machine over the Internet to the server of a health and fitness company, and receive personalized responses from that company.

3

(*Id.* col. 3 ll. 21-27).

  **B.**  **Procedural Background**

  On July 22, 2019, Philips filed this action against Fitbit. The second amended complaint asserts three counts of patent infringement under 35 U.S.C. § 271, involving the '007 patent (Count 1); the '233 patent (Count 2); and the '377 patent (Count 3).

  On July 22, 2021, the Court issued its Memorandum and Order on Claim Construction. In that decision, it concluded, among other things, that a means-plus-function claim term in the '007 patent—"means for computing athletic performance feedback data from the series of time-stamped waypoints obtained by said GPS receiver"—is indefinite under 35 U.S.C. § 112 for lack of corresponding structure for the claimed function. As to the '377 patent, the Court held that "indicating a physiologic status of a subject" does not require construction and should be given its plain and ordinary meaning.

  Fitbit moved to dismiss the complaint for failure to state a claim upon which relief can be granted. On August 10, 2021, the Court denied the motion to dismiss. On August 24, 2021, Fitbit filed its Answer and asserted six counterclaims, seeking declaratory judgments of invalidity and non-infringement.

  **C.**  **Infringement Contentions**

  Philips served its initial infringement contentions on January 31, 2020. (Philips Mem. at 1). It later served supplemental disclosures on May 15, 2020, but no new contentions with respect to any new products were added at that time. (*Id.*). Philips notified Fitbit in December 2020 that it intended to seek to add four products released that year to its infringement contentions regarding the '377 patent: the Charge 4, Versa 3, Inspire 2, and Sense. (Philips Ex. A). The release by Fitbit of the Charge 4 was first announced in March 2020. (Philips Ex. N at 1). The releases of the Versa 3, Inspire 2, and Sense were announced in August 2020. (Philips

Ex. O at 1).

According to Philips, it did not and could not have known about these new products until Fitbit publicly announced their release. Philips and Fitbit made at least some attempt to negotiate mutual contention amendments, although the parties dispute the scope and significance of such negotiations. (Philips Mem. at 2; Fitbit Opp. at 7). Philips has now moved for leave of the Court to serve supplemental infringement contentions for the '377 patent to cover the four new products.

## II.    Standard of Review

Local Rule 16.6 requires the patentee to disclose its infringement claims and theories, including claim charts that identify "each accused product" and provide "an element-by-element description of where and how each element of each asserted claim is found in each accused product or method." Local Rule 16.6(d)(1)(A). Those infringement contentions can be "amended and supplemented only by leave of court upon a timely showing of good cause." Local Rule 16.6(d)(5). To determine whether good cause exists, the court should consider the moving party's diligence and any prejudice to the non-moving party. *See O2 Micro Int'l. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *Id.*

In contrast to the "liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q-Lity Comput. Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (quoting *Amtel Corp. v. Info. Storage Devices, Inc.*, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)). Mandating such disclosures is intended to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once

5

they have been disclosed." *O2 Micro Int'l Ltd.,* 467 F.3d at 1366 n.12 (quoting *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006)). "If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id.*

### III. Analysis

#### A. Good-Cause Standard

##### 1. Diligence

The Court will first consider plaintiff's diligence in seeking to amend its infringement contentions.[2] It is plaintiff's burden to establish diligence as the moving party. *See O2 Micro Int'l Ltd.,* 467 F.3d at 1366. Although diligence is a fact-specific inquiry, court have tended to rely substantially on the length of delay as the most important factor. Courts have typically rejected a finding of diligence where new products were available for five months or more. *See, e.g., Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.,* 2007 WL 2221029, at *1 (N.D. Cal. July 30, 2007) (plaintiff not diligent after waiting five months); *GoPro, Inc. v. 360Heros, Inc.*, 2017 WL 1278756, at *2 (N.D. Cal. Apr. 6, 2017) (seven months); *Angioscore, Inc. v. TriReme Med., Inc.*, 2015 WL 75187, at *5 (N.D. Cal. Jan. 6, 2015) (ten months); *Thermapure, Inc. v. Giertsen Co. of Illinois*, 2012 WL 6196912, at *4 (N.D. Ill. Dec. 11, 2012) (eleven months); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4773960, at *2 (N.D. Cal. Sept. 19, 2014) (more than one year); *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, 2021

---

[2] Some courts have separated the diligence inquiry into two parts, asking whether a party was (1) diligent in discovering the basis for the amendment and (2) diligent in seeking amendment once the information was discovered. *See Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). Here, however, plaintiff does not dispute that the relevant time period began when defendant's products were first available to the general public. (Philips Mem. at 4-5). Therefore, the Court will consider whether plaintiff was diligent in seeking amendment after defendant's products were released in late March and August 2020.

WL 2906372, at *6 (W.D.N.Y. July 9, 2021) (twenty months).[3]

Where plaintiffs have filed amended contentions within a few months of a new product, courts have reached varying conclusions. *See Pavo Sols. LLC v. Kingston Tech. Co. Inc.*, 2018 WL 5099294, at *2 (C.D. Cal. July 18, 2018) (delay of two months leading to finding of lack of diligence). *But see Abiomed Inc. v. Maquet Cardiovascular LLC,* 2020 WL 3868803, at *4-5 (D. Mass. July 9, 2020) (finding of diligence despite three-month delay); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012) (finding of diligence despite delay of "few months").[4]

Here, the proposed amendment is based entirely on new public information that was not previously available to plaintiff. Information about the Charge 4 was first publicly available in late March 2020. (Philips Ex. N at 1). The remaining three products were first unveiled at the end of August 2020. (Philips Ex. O at 1). Plaintiff notified defendant in December 2020 that it intended to amend its contentions, but it did not actually file this motion until March 31, 2021. Thus, plaintiff waited approximately one year after the release of the Charge 4, and six months after the release of the other products, to file its motion to amend. Given those delays, there is a substantial question whether plaintiff acted diligently in seeking to amend its infringement

---

[3] The parties compare and contrast three cases finding a lack of diligence, although none concern the release of new products. In *Intellectual Ventures, LLC v. Lenovo Group, Ltd., et al.*, the court denied a motion to amend invalidity contentions because expert-report deadlines were imminent and the defendant failed to explain its delay. No. 16-cv-10860-PBS, slip op. at 2 (D. Mass. Aug. 15, 2019). In *Acer Inc. v. Tech. Properties Ltd*, the court found that the plaintiff was not diligent after it spent three months investigating infringement evidence once a stay was lifted. 2010 WL 3618687, at *4-5 (N.D. Cal. Sept. 10, 2010). And in *Synopsys Inc. v. Atoptech Inc.*, the court rejected a finding of diligence because the plaintiff did not show how its proposed amendments were tied to newly discovered information from a source-code review. 2016 WL 4945489, at *4-5 (N.D. Cal. Sept. 16, 2016).

[4] Courts have reached differing results when motions to amend claim contentions have been delayed for reasons other than the addition of a new product. *See O2 Micro Int'l. Ltd.*, 467 F.3d at 1366 (three-month delay leading to finding of lack of diligence). *But see Radware Ltd. v. F5 Networks, Inc.*, 2014 WL 3728482, at *2 (N.D. Cal. July 28, 2014) (finding of diligence despite three-month delay); *Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, 2011 WL 940263, at *3-4 (N.D. Cal. Feb. 18, 2011) (finding of diligence despite four-month delay).

contentions.

In defense of that delay, plaintiff contends that it did not file earlier because it was attempting to negotiate with defendant for a stipulation. The record indicates that the parties made at least some attempt to negotiate mutual contention amendments, although they dispute the scope and significance of such negotiations. In any case, plaintiff's assertion that its delay is excused by its attempt to negotiate a stipulation with defendant is not persuasive. *See O2 Micro Int'l Ltd.*, 467 F.3d at 1367 (finding that "[t]he district court did not err in concluding that the mere existence of good faith negotiations over a possible stipulation was insufficient to excuse [plaintiff's] delay"); *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3443835, at *2 (N.D. Cal. Aug. 8, 2011) (reasoning that "[t]he failure of the parties to reach agreement regarding a stipulated supplementation was foreseeable. If [defendant] was serious about amending its invalidity contentions, it should not have gambled for months on the possibility that a stipulation might be reached.") (emphasis omitted).

It is also true that defendant had been on notice for some time that plaintiff would seek an amendment. *See Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 2008 WL 624771, at *3 (N.D. Cal. Mar. 4, 2008) (concluding that plaintiff was diligent enough because, while it did not file a motion to amend for several months, it notified defendant of the basis of the amendment immediately by requesting discovery); *IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1133, 1152 n.19 (N.D. Cal. 2004) ("While [defendant's] motion makes clear that it has not complied fully with the letter of the local rules, the court finds that [plaintiff] has long been on notice of these potential combination [sic].") Arguably, plaintiff "notified" defendant in December 2020 when it began trying to negotiate a stipulation, which could mitigate the effect of the delay. Such a "notification" is, however, without legal effect. And the

8

fact remains that plaintiff did nothing for many months after that "notification."

Finally, plaintiff alleges that it "believed that the most efficient approach to amending the contentions would be to seek a single amendment that would cover all the new products released during the course of the discovery." (Philips Mem. at 4). The Court does not find that argument persuasive. *See MediaTek, Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 2403644, at *6 (N.D. Cal. May 31, 2013) ("[Plaintiff's] excuse that judicial economy would not have been served by serial motions to amend its Infringement Contentions is unavailing. The Patent Local Rules and implementing caselaw do not limit the number of motions to amend and do not advise parties to delay bringing such motions until they are certain their proposed contentions are in final form.").

Under the circumstances, the Court concludes that plaintiff has not met its burden of demonstrating diligence, given the substantial delay between the time it became aware of the alleged infringing behavior and the filing of the motion to amend infringement contentions.

### 2. **Prejudice**

Although that finding is likely dispositive, the Court will nonetheless consider whether the proposed amendments would be unduly prejudicial to defendant.[5] One critical inquiry is whether adding four new products would unfairly broaden the scope of the case. Some district courts have found that a party may move to add a new or updated product without prejudicing the non-moving party if that addition would not substantially change the asserted infringement theory. *See, e.g.*, *Abiomed*, 2020 WL 3868803, at *4-5 (noting that new theories of infringement

---

[5] Some courts have concluded that even without a finding of diligence, the court has discretion to grant leave to amend if there is no prejudice. *See Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012) (stating that "even if the movant was arguably not diligent, the court may still grant leave to amend. Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery").

are critical to determination of prejudice for new products); *Bd. of Trustees v. Roche Molecular Sys.*, 2008 U.S. Dist. LEXIS 16556, at *11-14 (N.D. Cal. Mar. 3, 2008) (permitting "late-stage amendment" of infringement contentions to add newly released product because parties and court had already discussed infringing technology during claim construction, minimizing prejudice to nonmoving party); *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, 2013 U.S. Dist. LEXIS 53664, at *11-12 (S.D. Cal. Apr. 15, 2013) (granting motion to amend infringement contentions to add updated version of accused product, where plaintiff argued that same patent claims and infringement theories applied); *Digital Reg of Texas, LLC v. Adobe Sys.*, 2014 U.S. Dist. LEXIS 58113, at *11-13 (N.D. Cal. Apr. 24, 2014) (permitting addition of new version of software because changes did not "fundamentally alter the theory of infringement").

Conversely, courts generally disfavor amendments that add new theories of infringement, particularly late in the litigation and near or after the close of discovery, as unduly prejudicial. *See, e.g.*, *Fast Felt Corp. v. Owens Corning Roofing & Asphalt, LLC,* 2017 U.S. Dist. LEXIS 212728, at *2-3 (N.D. Ohio July 26, 2017) (granting motion to strike infringement contentions that introduced entirely new infringement theories and would disrupt case schedule); *Adobe Sys. v. Wowza Media Sys.*, 2014 U.S. Dist. LEXIS 23153, at *52-53 n.7 (N.D. Cal. Feb. 22, 2014) (striking supplementation that introduced new infringement theories because "prejudice is inherent in the assertion of a new theory after discovery is closed"); *Symantec Corp. v. Acronis, Inc.*, 2013 U.S. Dist. LEXIS 29931, at *5 (N.D. Cal. Mar. 5, 2013) (denying motion to add new product because it would "substantially expand the scope" of case).

Here, the parties dispute whether new infringement theories are being raised. Plaintiff alleges that it is "simply contending that these pre-existing features now infringe as incorporated into Fitbit's new products." (Philips Reply at 4). In contrast, defendant asserts that the new

contentions accuse additional features that were not identified in the earlier contentions. Defendant contends that plaintiff is seeking to introduce a new theory "that determining heart rate zones 'personalized' to a user meets the 'receiving a calculated response' limitation of the '377 Patent." (Fitbit Sur-Reply at 6).

Central to that dispute are the Charge 3 and (proposed) Charge 4 infringement claim charts for Claim 1(h) of the '377 patent.[6] Claim 1(h) provides for "a method for interactive exercise monitoring, the method comprising the steps of receiving a calculated response from the server, the response associated with a calculation performed by the server based on the exercise-related information." (Philips Ex. H at 20; Ex. I at 21). The Charge 3 and Charge 4 claim charts provide as follows with respect to Claim 1(h):

> The method of the Accused Product involves receiving a variety of different calculated responses from the server (such as cardio fitness score, heart rate zones, and resting heart rate), the responses associated with a calculation performed by the server based on the exercise-related information.

(*Id.*).

However, defendant highlights two additions to the Charge 4 claim chart for Claim 1(h). The first concerns viewing a "cardio fitness score." (Philips Ex. I at 21). The second describes heart rate zones "personalized to you." (*Id.* at 22). The latter further provides:

> Your heart rate zones are personalized based on your resting heart rate and age. As your cardiovascular fitness changes, your personalized heart rate zones will adapt with you. Check out your unique beats per minute (bpm) targets for fat burn, cardio, and peak heart rate zones in the Fitbit app. . . . The three target heart rate zones are fat burn, cardio, and peak, which are now all personalized to your cardiovascular fitness and age in your Fitbit app.

---

[6] The same dispute about personalized heart rate zones is also featured in the new contentions for the Versa 3, Inspire 2, and Sense. (Philips Ex. R at 20; Ex. S at 21; Ex. T at 21). The Court will not reiterate this debate, except to say that any prejudice resulting from the theories asserted with respect to the Charge 4 would also be present for the three other products.

(*Id.*). From those statements, defendant infers that plaintiff is asserting a new theory that determining "personalized heart rate zones" meets the '377 patent limitation.

It is somewhat unclear if those differences mean that the new claims assert an entirely new infringement theory that would prejudice defendant. The Charge 3 claim chart also refers to personalized features, stating things like, "your estimate of 41-45 is between fair and average for men your age." (*Compare* Philips Ex. H at 21 *with* Ex. I at 22) (emphasis added). But it is certainly true that there is not a perfect alignment between the Charge 3 and Charge 4 infringement contentions, and therefore that at least some differences seem to exist. And regardless, at a minimum, some litigation, and possibly some additional discovery, will be required to resolve the issue.

In any event, if there are no new infringement theories, defendant further contends that the addition of four new products would require substantial additional discovery. It contends that fact discovery, now closed, was extended three times, and that the issues at this stage should be narrowing, not expanding. *See, e.g.*, *CyWee Grp. Ltd v. Apple Inc.*, 2016 WL 7230865, at *3 (N.D. Cal. Dec. 14, 2016) (denying motion to amend to include new products and emphasizing that only two weeks remained in discovery). Plaintiff responds that any impact on discovery would be minimal because discovery has already been taken on the accused features. But even if that were true, this amendment would certainly require discovery on the issue of damages, which is surely not trivial.

This is not a case where "fact discovery [will] continue[] for six months after the amendment" or where "the non-moving party did not claim that it would be prejudiced by the amendment or that it would need additional discovery." *Id.*, at *3; *see also Rembrandt Patent Innovations, LLC v. Apple Inc.,* 2015 WL 8607390, at *3 (N.D. Cal. Dec. 13, 2015) (stating that

"[t]here must be some reasonable cut-off date after which [patent holder] cannot further expand the case simply because [accused infringer]'s product cycle has outpaced the resolution of this case."); *Richtek Tech. Corp. v. uPi Semiconductor Corp.*, 2016 WL 1718135, at *3 (N.D. Cal. Apr. 29, 2016) (stating that "it is time for the case to narrow, not expand[,]" and denying leave to amend to include new products).  Instead, fact discovery will have to be reopened, if for no other reason than (1) to address damages claims and (2) possibly to examine whether there are differences in the claims.

In short, defendant would likely be prejudiced, at least to some extent, if plaintiff were permitted to amend its infringement contentions.

### B.  Merits of '377 Patent

Finally, defendant contends that plaintiff's proposed amendments would be futile because the '377 patent expired on January 18, 2020, before any of the newly-accused Fitbit products were released.  (Fitbit Opp. at 9).  According to defendant, the earliest application in the '377 patent's priority chain is the '486 application filed on December 17, 1999.  (*Id.* at 10).  The next application in this chain is the '191 patent, filed on December 15, 2000.  (*Id.*).  Defendant alleges that the '191 patent operated as a conversion of the '486 application, meaning that the requisite 20-year term began on December 17, 1999, not December 15, 2000.  (*Id.*).  Plaintiff's position is that the '191 patent was not a conversion, and in any event, that is not a proper basis to oppose amending infringement contentions.  (Philips Mem. at 5-6).

Other courts have concluded that "the good cause requirement does not require the court to analyze the strength of plaintiff's infringement contentions."  *Bd. of Trs. of Leland Stanford Junior Univ.*, 2008 WL 624771, at *4; *see also General Atomics v. Axis-Shield ASA*, 2006 WL 2329464, at *2 (N.D. Cal. Aug. 9, 2006) (rejecting argument that motion to amend should be denied because new theory of infringement was "futile" and concluding that such issues "are best

13

addressed on summary judgment"); *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *3 (E.D. Tex. Apr. 16, 2015) (deeming defendants' futility argument "misplaced" because "infringement contentions are not intended to be a forum for adjudicating the merits of the plaintiff's contentions").

Defendant does not cite any law that directs the Court to consider its substantive argument about expiration; it only offers conclusory statements like "there is no reason to defer addressing the expiration date dispute because it is ripe for resolution." (Fitbit Sur-Reply at 10). The Court does not deem it appropriate at this juncture to examine the merits of plaintiff's infringement contentions, including whether the '377 patent expired prior to the launch of defendant's new products.

## IV.  Conclusion

In summary, plaintiff did not exercise reasonable diligence in waiting six (and in the case of Charge 4, twelve) months before attempting to amend its infringement contentions. It also appears that defendant would be prejudiced by the amendment, because new infringement theories may be introduced into the case and, even if not, fact discovery would have to be reopened.

Accordingly, and for the foregoing reasons, plaintiff's motion for leave to amend infringement contentions is DENIED.

**So Ordered.**

Dated: November 19, 2021

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court